OPINION BY
STEVENS, P.J.E.:
Dante Lawrence (“Appellant”) appeals from the order entered in the Court of Common Pleas of Chester County dismissing his first petition filed pursuant to the Post Conviction Relief Act (“PCRA”), 42 Pa.C.S. § 9541-9546. Upon careful review of Appellant’s seven ineffective assistance of counsel claims, we affirm.
In our memorandum decision disposing of Appellant’s direct appeal,[1] we summarized the pertinent history of the case as follows:
On the evening of January 5, 2010, Lawrence and his girlfriend, Shanita Johnson (“Johnson”), were sitting in the living room of Lawrence’s residence, located in Coatesville, Pennsylvania, when they heard a loud noise and glass breaking at the back door. Lawrence immediately went to investigate, when he saw three individuals fleeing the scene, one of whom wore a somewhat distinctive leather jacket with a design on the back. Lawrence was angered by the attempted invasion of his home, and *39 he called a friend, Sham[aou]r Hall (“Hall”), to assist him in locating the intruders. Hall subsequently picked Lawrence up in Hall’s vehicle and they set off in search of the intruders. In a nearby alley, Hall and Lawrence located a man wearing a leather jacket with a design on the back. Thinking that this man [later identified as Ranay Vaughn] was one of the intruders, Lawrence jumped from Hall’s moving vehicle, chased the man, and shot him several times, causing his death.
Following the shooting, Lawrence left the area and relocated to Georgia, where he lived under an alias. In August 2010, police arrested Lawrence in Georgia, and he was extradited to Pennsylvania and charged with criminal homicide and various other crimes related to the January 5, 2010 shooting.
The matter proceeded to a jury trial, at the close of which the jury found Lawrence guilty of first-degree murder and persons not to possess firearms. Thereafter, the trial court sentenced Lawrence to life in prison. Lawrence timely filed post-sentence Motions, challenging the weight of the evidence and seeking reconsideration of his sentence. The trial court denied these Motions, after which Lawrence filed a timely Notice of appeal.
Id., at 1-2.
This Court affirmed judgment of sentence on August 9, 2013, and the Pennsylvania Supreme Court denied Appellant’s petition for allowance of appeal on January 8, 2014. On January 2, 2015, Appellant filed a pro se PCRA petition and the PCRA court appointed counsel. On July 28, 2015, appointed counsel filed an amended petition requesting an evidentiary hearing for only two issues raised in the pro se petition, namely, those alleging improper prosecutorial remarks made in opening and closing statements. The amended petition otherwise explained counsel’s position that no merit existed to support a hearing for the remaining fourteen pro se issues. Dissatisfied with appointed counsel’s advocacy, Appellant filed a pro se “Petition for Stay” requesting time to retain private counsel, which the court granted.
The PCRA court continued Appellant’s case until November 9,2015, on which date private counsel entered her appearance and filed a motion for continuance to allow her time to prepare for an evidentiary hearing. The court granted the motion. On January 21, 2016, counsel filed a motion for leave to file an amended petition raising five additional issues to the original two raised in prior counsel’s amended petition. The court granted counsel’s motion and authorized her to question witnesses on all claims presented in her amended petition.
Appellant’s evidentiary hearing took place on February 1, 2016, after which the court accepted briefs for its consideration. On May 13, 2016, the PCRA court issued a Notice of Intent to Dismiss the matter and granted Appellant 20 days to respond. Receiving no response from Appellant, the court dismissed Appellant’s petition on July 25, 2016, having concluded Appellant failed to establish ineffective assistance of counsel by either trial or appellate counsel. This timely appeal followed.
Appellant presents the following questions for our review:
I. WAS COUNSEL CONSTITUTIONALLY INEFFECTIVE UNDER THE SIXTH AMENDMENT FOR FAILING TO OBJECT TO A PORTION OF THE PROSECUTOR’S OPENING STATEMENT WHICH EXPRESSED THE PROSECUTOR’S PERSONAL OPINION AND SET A TONE OF DRAMA, PASSION AND PREJU *40 DICE AGAINST THE APPELLANT AND FOR FAILING TO SEEK A CURATIVE/CAUTIONARY INSTRUCTION DIRECTING THE JURY TO DISREGARD THE STATEMENT?
II. WAS COUNSEL CONSTITUTIONALLY INEFFECTIVE UNDER THE SIXTH AMENDMENT FOR FAILING TO OBJECT TO A PORTION OF THE PROSECUTOR’S CLOSING STATEMENT WHEREIN THE PROSECUTOR VOUCHED FOR AND GAVE HIS PERSONAL OPINION OF THE CREDIBILITY OF THE WITNESSES AND THE APPELLANT’S GUILT?
III. WERE APPELLANT’S CONSTITUTIONAL RIGHTS UNDER THE SIXTH AMENDMENT WERE [SIC] VIOLATED BY TRIAL COUNSEL’S INEFFECTIVE FAILURE TO REQUEST A CORRUPT AND POLLUTED CHARGE RELATED TO ■ HALL’S TESTIMONY?
IV. DID APPELLATE COUNSEL VIOLATE APPELLANT’S FOURTEENTH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION BY ADMITTING IN THE BRIEF TO THE SUPERIOR COURT ON DIRECT APPEAL THAT APPELLANT WAS THE SHOOTER?
V. . WAS COUNSEL CONSTITU- . TIONALLY INEFFECTIVE UNDER THE SIXTH AMENDMENT ■FOR FAILING TO REQUEST/MOVE FOR DISCLOSURE OF AND PRESENT TO THE JURY MATERIAL AND RELEVANT PORTIONS OF THE VIDEOTAPE FROM THE MIDWAY BAR; DIRECT APPEALS COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE, AND PRESENT A RELATED CLAIM TH AT THE PROSECUTION FAILED TO DISCLOSE MATERIAL EVIDENCE PURSUANT TO BRADY V. MARYLAND VIOLATING APPELLANT’S FOURTEENTH AMENDMENT RIGHTS?
VI. WERE APPELLANT’S CONSTITUTIONAL RIGHTS UNDER THE SIXTH AMENDMENT WERE [SIC] VIOLATED BY ' COUNSEL’S INEFFECTIVE FAILURE TO TIMELY OBJECT TO THE PROSECUTOR’S MISREPRESENTATION OF THE TESTIMONY OF THE MEDICAL EXAMINER, ERICA WILLIAMS?
VII. WERE THE APPELLANT’S RIGHTS UNDER THE SIXTH AND FOURTEENTH .AMENDMENTS violated' BASED UPON THE CUMULATIVE IMPACT OF THE ABOVE ERRORS[?]
Appellant’s brief at 3-4,
“On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court’s findings are supported by the record and without legal error.” Commonwealth v. Edmiston, 619 Pa. 549, 65 A.3d 339, 345 (2013) (citation omitted). “[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the. light most favorable to the prevailing party at the PCRA court level.” Commonwealth v. Koehler, 614 Pa. 159, 36 A.3d 121, 131 (2012) (citation omitted).
• Counsel is presumed effective; thus, an appellant has the burden of proving otherwise. See Commonwealth v. *41 Wright, 599 Pa. 270, 961 A.2d 119, 148 (Pa. Super. 2008). “In order for Appellant to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which ... so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.” Commonwealth v. Johnson, 868 A.2d 1278, 1281 (Pa. Super. 2005) (citation omitted).
To prevail on his ineffectiveness claims, Appellant must plead and prove by a preponderance of the evidence that (1): the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (8) Appellant suffered prejudice because of counsel’s action or inaction. With regard to the [reasonable basis] prong, we will conclude that counsel’s chosen strategy lacked a reasonable basis only if Appellant proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To establish the [prejudice] prong, Appellant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel’s action or inaction.
Commonwealth v. Spotz, 610 Pa. 17, 18 A.3d 244, 260 (2011) (internal quotation marks and citations omitted). See also Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (holding ineffectiveness established with evidence that counsel committed specific error or omission unsupported by reasonable strategy and of such magnitude as to probably have affected the outcome).
Appellant first argues that trial counsel was constitutionally obligated to object when the prosecutor began his opening statement by repeating an offensive statement Appellant allegedly made in the immediate aftermath of shooting Ra-nay Vaughn:
“Fuck that nigger ain’t nobody going to rob me.” Those are the words of the Defendant immediately after he shot Ranay Vaughn 5 or 6 times. Those are the words of the Defendant after he stalked, hunted down and killed Ranay Vaughn leaving him dead in an alleyway in Coatesville. Those are the words ladies and gentlemen of a cold-blooded murderer.
N.T. 2/1/16 at 8 (quoting 6/4/12, at 41). According to Appellant, the prosecutor’s statement did not inform the jury of the background of the case or represent a fair inference from upcoming evidence. Instead, the comments at issue were purely prejudicial, impeding a jury’s ability to render an impartial, dispassionate verdict, Appellant concludes. We disagree.
A prosecutor is generally allowed to vigorously present and argue the 'case, as long as the comments are supported by evidence and contain inferences reasonably derived from that evidence. Commonwealth v. Kemp, 562 Pa. 154, 753 A.2d 1278, 1281 (2000). “The focus of this Court’s consideration of claims regarding prosecutorial misconduct is to determine whether the defendant was deprived of a fair trial and not whether the defendant was deprived of a perfect trial.” Id., at 1282 (citing Commonwealth v. LaCava, 542 Pa. 160, 666 A.2d 221, 231 (1995)); see also Commonwealth v. Holloway, 524 Pa. 342, 572 A.2d 687 (1990). Thus, “prosecutorial misconduct does not occur unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true ver- *42 diet.” Commonwealth v. Paddy, 569 Pa. 47, 800 A.2d 294, 316 (2002).
Commonwealth v. Cuevas, 574 Pa. 409, 832 A.2d 388, 394 (2003).
In Cuevas, the prosecutor used the same offensive and contemptuous words the defendant allegedly used during his deadly beating of the victim. Reasoning that the quotation was both undisputedly accurate and relevant to the mens rea element of the crime, our Supreme Court perceived no prosecutorial misconduct:
Here, the prosecution was required to prove appellant killed Riddick with malice. The prosecutor used the same offensive words appellant uttered to express his disdain for the victim during the beating. “[Ejvidence concerning the relationship between the defendant and a homicide victim is relevant and admissible for the purpose of proving ill will, motive or malice.” Commonwealth v. Myers, 530 Pa. 396, 609 A.2d 162, 164 (1992) (citing Commonwealth v. Gibson, 363 Pa.Super. 466, 526 A.2d 438, 440 (1987)). With the established latitude afforded a prosecutor to vigorously present his case and the need to prove beyond a reasonable doubt each element of each crime, there was no misconduct here. The prosecutor was merely using appellant’s exact words in the context and manner in which he conveyed them. Likewise, the prosecutor’s imagery regarding the blows and odors from the crime scene stemmed from reasonable inferences based on the evidence presented. This was a violent crime; the image of that crime will necessarily be violent and disturbing as well.
Cuevas, 832 A.2d at 394-95.
We find the rationale in Cuevas to be directly on point and, therefore, controlling. As prosecutorial use of the defendant’s exact words was proper in Cuevas, so, too, did use of Appellant’s offensive, derisive words about his shooting victim fairly preview admissible evidence of Appellant’s state of mind at the time of the shooting.
Appellant advances the same argument to support the second part of this issue, positing that an objection was required to the prosecutor’s reference to Appellant as a “cold-blooded murderer.” This remark, too, was fair comment on expected evidence that Appellant pursued, slayed, and disparaged his victim, and it was -not so graphic, given the context of such evidence, to have had the unavoidable effect of prejudicing the jury. See Commonwealth v. Rainey, 540 Pa. 220, 656 A.2d 1326 (1995) (holding closing arguments in guilt and penalty phases referring to defendant as “criminal” and having “cold-bloodedly murdered” victim fairly represented evidence and were not so graphic as to exceed bounds of permissible oratorical flair). Finding, therefore, that the contested references were within the reasonable latitude accorded the prosecution in presenting its version of the case, we reject Appellant’s first ineffective assistance claim as without arguable merit.
In his second issue, Appellant claims that trial counsel ineffectively failed to object to improper prosecutorial vouching for Commonwealth witnesses during closing argument. It is well-settled that vouching is a form of prosecutorial misconduct, occurring when a prosecutor “places the government’s prestige behind a witness through personal assurances as to the witness’s truthfulness, and when it suggests that information not before the jury supports the witness’s testimony.” Commonwealth v. Reid, 627 Pa. 78, 99 A.3d 427, 447 (2014). “Improper bolstering or vouching for a government witness occurs where the prosecutor assures the jury that the witness is credible, and such assurance *43 is based on either the prosecutor’s personal knowledge or other information not contained in the record.” Commonwealth v. Chmiel, 612 Pa. 333, 30 A.3d 1111, 1180 (2011) (citation omitted).
In determining whether the Commonwealth improperly vouched for the credibility of two of its witnesses in this case, we find Commonwealth v. Judy, 978 A.2d 1015 (Pa.Super. 2009), to be instructive. In Judy, this court stated that,
It is settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. However, the prosecutor may comment on the credibility of witnesses. Further, a prosecutor is allowed to respond to defense arguments with logical force and vig- or. If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the -witnesses’ credibility.
[Chmiel, 889 A.2d at 544] (internal citations and quotations omitted).
Thus, proper examination of the comments of the assistant district attorney in closing requires review of the arguments advanced by the defense in defense summation.
Judy, 978 A.2d at 1020.
Here, Appellant first claims that the following statement during closing argument constituted improper prosecutorial vouching:
The moment Mr. Lawrence walked through that door, he had the presumption of innocence. But as the judge will instruct you, he no longer has a presumption of innocence when one thing happens. And I will submit to you, ladies and gentlemen, that has happened.... I’ll submit to you ladies and gentlemen, after hearing all the evidence that you’ve heard, that you should no longer give him that presumption, because he’s guilty of murder.
N.T. 6/8/12 at 50. “This is clearly a statement of the prosecutor’s personal belief as to Appellant’s guilt[,]” Appellant concludes. See Appellant’s brief at 29. Within this passage, however, it is clear that the pros-' ecutor did not personally attest to Appellant’s lack of credibility but only invited the jury to review “all the evidence you’ve heard” and find Appellant guilty. We find nothing improper with this statement.
Similarly, Appellant contends that the prosecutor improperly injected his personal opinion “in the context of vouching for the truthfulness of two key Commonwealth witnesses, Hall and Small[,]” as follows:
Shamaour Hall, you saw him on the stand. His demeanor. He was truthful. The inconsistencies in the defendant’s story were lies. The inconsistencies with the Commonwealth witnesses were mistakes. Why? Because they’re [the Commonwealth witnesses’ testimonies] corroborated by other evidence. Everything that this defendant told you, there is not a single shred of evidence that corroborates what he says. [Regarding] [everything that he said happened, [there is] not a single shred of evidence that corroborates it.
If you don’t ask the right question, you’re not going to get the right answer because she won’t lie to you, but she’s not going to volunteer anything either.
Notes of Testimony, 6/8/12 at 50, 51-52, 68.
Our review of the record reveals that Appellant’s trial counsel had no reasonable basis for objecting to these closing remarks. The first contested remark, above, was responsive to Appellant’s opening argument assailing the credibility of Shama-our Hall: “Shamaour Hall, he met with the police. He thought he could lie his way out and play dumb.” N.T. 6/4/12 at 59. The *44 third remark also addressed Appellant’s derisive closing regarding witness Small, about whom it was said: “You would think she’s being truthful. She has no reason to lie.She’s the one who’s supposed to be the truthful one, cooperative one.” N.T. 6/8/14 at 26-27. The prosecutor’s remarks, therefore, addressed issues of witness credibility raised by Appellant’s opening and closing arguments and were, accordingly, within the “fairly wide latitude” of permissible bounds of prosecutorial response, see Commonwealth v. Harris, 884 A.2d 920, 927 (Pa.Super. 2005) (acknowledging wide latitude afforded prosecution in responding to defense arguments), such that we find no merit to Appellant’s ineffectiveness challenge based on them.
In addition to responding to trial counsel’s credibility arguments, the second contested remark, above, expressly called upon the jury to assess witness credibility in light of the totality of evidence, which, the prosecutor maintained, supported only the Commonwealth witnesses’ accounts. Accordingly, seeing no arguable merit to Appellant’s vouching claim, we conclude that trial counsel cannot be considered ineffective for failing to object to such remarks.
Appellant argues, next, that trial counsel ineffectively failed to request a corrupt and polluted source charge related to Mr. Hall’s testimony.
It is well settled that whether to request additional points for charge is one of the tactical decisions “within the exclusive province of counsel.” Commonwealth v. Sullivan, 450 Pa. 273, 299 A.2d 608, 610 (1973), cert. denied, 412 U.S. 923, 93 S.Ct. 2745, 37 L.Ed.2d 150 (1973). We should not invade that province and declare counsel ineffective if any reasonable basis for counsel’s decision existed at the time of trial. Commonwealth v. Maroney, 427 Pa. 599, 235 A.2d 349 (1967). Rather, we should scrupulously follow the presumption that attorneys act in the interests of their clients, and insist that Appellant meet his burden of proving that his attorneys had no reasonable basis for their action. See, e.g., Commonwealth v. Watson, 523 Pa. 51, 65, 565 A.2d 132, 139 (1989).
Commonwealth v. Derk, 553 Pa. 325, 719 A.2d 262, 265 (1998).
[T]he standard charge for accomplice testimonyfis] commonly referred to as the.eorrupt and,polluted source charge.[2 “I]n any case where an accomplice implicates the defendant, the judge should tell the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution.” ... “If the evidence is sufficient to present a jury question with respect to whether the prosecution’s witness was an accomplice, the defendant is entitled .to an instruction as to. the weight to be given to that witness’s testimony.”
Commonwealth v. Smith, 609 Pa. 605, 17 A.3d 873, 906 (2011) (citations omitted). *45 “The ‘corrupt source’ charge in particular is designed specifically to address situations where one accomplice testifies against the other to obtain favorable treatment. It directs the jury to view the testimony of an accomplice with disfavor and accept it only with care and caution.” Id.
Appellant’s trial defense was that Mr. Hall unilaterally decided to jump from the vehicle and shoot the victim, making Appellant completely innocent of the shooting. By requesting a corrupt source instruction, Appellant would have been admitting that Mr. Hall was an accomplice in a shared plan to shoot the men who invaded Appellant’s home — an admission in direct conflict with his defense theory.
Our courts have regularly recognized a reasonable strategy in trial counsel’s decision to forego a discretionary corrupt source charge where the charge is inconsistent with a defendant’s assertion that he has not committed the crime in question. See Commonwealth v. Karabin, 493 Pa. 249, 426 A.2d 91 (1981) (deeming reasonable tactic to forego corrupt source instruction against girlfriend witness, who allegedly rode in car with defendant during shootings; defendant advanced innocence defense and alleged jealousy motivated girlfriend to testify falsely), and Commonwealth v. Johnson, 496 Pa. 546, 437 A.2d 1175 (1981) (holding decision to forego instruction was within realm of reasonable defense strategy to accuse witness, a leader of street gang splinter group, of framing gang-member defendant who asserted complete innocence). Because we discern a reasonable basis for trial counsel’s strategy to deny an accomplice relationship between Appellant and Mr. Hall, whom Appellant accused of independently attacking the victim, we deny Appellant relief on this claim.
In his fourth issue, Appellant argues that counsel on direct appeal rendered ineffective assistance by admitting Appellant shot the victim, through argumentation that evidence was, at most, sufficient to prove third-degree, not firstrde-gree, murder. We disagree. .
Specifically, Appellant’s counseled brief on direct appeal assailed the denial of his motion for judgment of acquittal by arguing “the Commonwealth failed to introduce sufficient evidence to prove the element of specific intent to kill beyond a reasonable doubt that is required, to find the defendant guilty of murder in the first degree.” See Appellant’s brief, at RR 3, The argument continued:
[t]hough the Commonwealth presented sufficient evidence to prove a human being was killed by the defendant ... [t]he defendant in this case acted under a sudden and intense passion resulting from serous provocation by the victim. The [defendant] had just been the victim himself. [Witness Shanita Johnson testified defendant was “angry” from the attempted burglary. Mr. Hall described defendant as “hyper” and was surprised that defendant leapt from a moving vehicle to pursue the victim. Ms.. Johnson was worried that defendant would do something-stupid], The defendant did have the prerequisite of malice and more accurately was guilty of third degree murder.... The defendant acted with malice but without a specific intent to kill the victim.... The court should have exercised its reasonable judgment and notwithstanding the jury’s verdict, exercised its discretion to find the defendant guilty of third degree murder. The defendant is entitled to a new trial as the elements of first-degree murder were not met.
Appellant’s brief, at RR 3-6.
Initially, Appellant asserts baldly that direct appeal counsel’s concession was per *46 se ineffective, as counsel thereby “failed to subject the state’s case to any real adversarial testing on direct appeal. [United States v.] Cronic, [466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)].[3] However, “Cronic-type errors are extremely limited,” see Commonwealth v. Williams, 607 Pa. 597, 9 A.3d 613, 619 (2010), such that “the presumed prejudice outlined in Cronic has been applied in three circumstances: where there was an actual or constructive denial of counsel, the state interfered with counsel’s assistance, or counsel had an actual conflict of interest.” Commonwealth v. Brown, 18 A.3d 1147, 1155 (Pa.Super. 2011) (quoting Commonwealth v. Reaves, 592 Pa. 134, 923 A.2d 1119, 1128 (2007)).
A Cronic analysis “is limited to situations where counsel’s failure is complete, ie., where counsel has entirely failed to function as the client’s advocate.” Commonwealth v. Mallory, 596 Pa. 172, 941 A.2d 686, 700 (2008) (citation and quotation marks. omitted). As this Court in Brown observed:
The recognized instances of per se ineffectiveness entitling a defendant to automatic relief are extremely narrow. Commonwealth v. Halley, 582 Pa. 164, 870 A.2d 795 (2005) (counsel did not file a Pa.R.A.P. 1925(b) statement and waived all issues, thereby denying the defendant his constitutional right to direct appeal); Commonwealth v. Liebel, 573 Pa. 375, 825 A.2d 630 (2003) (attorney did not file a petition for allowance of appeal, as requested by the defendant, and denied his client the right to seek discretionary review with our Supreme Court); Commonwealth v. Lantzy, 558 Pa. 214, 736 A.2d 564, 572 (1999) (lawyer did not file a direct appeal, despite defendants request); see also Commonwealth v. Burton, 973 A.2d 428 (Pa.Super.2009) (filing of an untimely 1925(b) statement); Commonwealth v. Bennett, 593 Pa. 382, 930 A.2d 1264 (2007) (not filing an appellate brief so defendant did not obtain direct review).
On the other hand, the types of actions or inactions that are not subject to Cronic are legion. E.g. Commonwealth v. Reed, 601 Pa. 257, 971 A.2d 1216, 1226 (2009) (“filing of an appellate brief, deficient in some aspect or another, does not constitute a complete failure to function as a client’s advocate so as to warrant a presumption of prejudice under Cronic”); ... [Commonwealth v.] Cousin, 585 Pa. 287, [888 A.2d 710, 719 (2005) ] (Cronic presumption not applicable merely because trial counsel conceded guilt of lesser crime in closing argument at non jury trial)....
Brown, 18 A.3d at 1156-57.
Cronic does not apply where, as here, direct appeal counsel strategically conceded to the Superior Court that evidence sufficed to establish third-degree murder only within a larger, overarching argument asserting the insufficiency of evidence of Appellant’s specific intent to kill. Appellant’s claim of per se ineffectiveness in this regard is, therefore, meritless.
So, too, does Appellant fail to establish ineffectiveness under the tripartite test of Strickland. He claims that counsel’s concession caused him “severe and potentially irreparable prejudice[ ],” which could have been avoided had counsel simply assumed arguendo that if the evidence proved anything at all it was, at most, third-degree murder. We discern no preju *47 dicial effect from direct appeal counsel’s contested strategy, however, as this Court affirmed judgment of sentence upon identifying “ample evidence for the jury to infer that Lawrence acted with specific intent to kill the victim, [such that] the trial court properly denied Lawrence’s Motion for judgment of acquittal.” Commonwealth v. Lawrence, No. 3061 EDA 2012, unpublished memorandum at 6. Because Appellant has not demonstrated how, but for the counsel’s appellate argument, he probably would have won acquittal on the charge of first-degree murder, his claim is devoid of merit.
In Appellant’s fifth issue, he contends that both trial and appellate counsel were ineffective for failing to raise and develop a Brady[4] claim that the prosecution withheld surveillance videotape evidence from the night in question that would have discredited Mr. Hall’s testimony. Specifically, Mr. Hall testified that he entered the Midway Bar shortly after 8:00 p.m. and left five minutes later upon seeing three men. who matched the description Appellant gave of his assailants from earlier that day. Hall testified that he drove to Appellant’s home and returned to the bar with Appellant at approximately 8:30 p.m., where only Appellant and Shani-ta Johnson entered but did not see the suspects. Appellant, as part of his narrative implicating Hall as the aggressor, testified that Hall had entered the bar while he waited in the car.
Pursuant to trial counsel’s discovery request, the Commonwealth turned over four surveillance tapes from the Midway Bar depicting events from no earlier than 9:03 p.m. N.T. 2/1/16 at 25. Appellant contends that trial counsel ineffectively failed to conduct an independent investigation into the whereabouts of videotape recordings covering the critical time period of 8:00 to 8:30 p.m. At the PCRA hearing, trial counsel testified that he contacted police investigators and asked for additional videotapes, but he was told that police had turned over all the videotapes available from the Midway Bar. N.T. at 25-26. Trial counsel admitted that he did not contact the Midway Bar or hire a private investigator to confirm that no other videotapes existed. N.T. at 26.
Appellant argues that trial counsel’s failure to investigate into the possible existence of additional, relevant videotapes prejudiced Appellant. He contends, “it is more likely than not that the missing video footage would have been preserved[,] could have been shown to the jury[, and,] [he] believefs] and aver[s,] ... would have shown that Hall’s version of events was inaccurate and not credible ... while Appellant’s testimony was credible.” Appellant’s brief at 47. To the extent the Commonwealth failed to disclose such videotapes, Appellant posits, trial counsel was ineffective for failing to move for their disclosure, and direct appeal counsel was ineffective for failing to raise and argue a Brady claim. Id.
“To establish a Brady violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant.” Commonwealth v. Robinson, 122 A.3d 367, 373 (Pa.Super. 2015). To constitute a Brady violation, “the withheld evidence must have been in the exclusive control of the prosecution at the time of trial.” Id. Of course, the underlying premise in all Brady violations is that the evidence actually exists.
*48 Appellant premises his Brady-based ineffectiveness claims on his belief that the Commonwealth withheld video footage recovered from the Midway Bar. Appellant has neither discovered any such video, shown that it once existed, nor uncovered evidence of an official cover-up with respect to such a video. As this underlying Brady allegation is unsupported by any evidence of record and is, instead, based on mere speculation, we deem it, and the ineffectiveness claims premised upon it, meritless. See Commonwealth v. Koehler, 614 Pa. 159, 36 A.3d 121, 135 n.9 (2012) (deeming meritless a claim of ineffective failure to investigate based on meritless, unsubstantiated Brady claim).
Next, Appellant argues that trial counsel rendered ineffective assistance when he failed to object to what Appellant considers to have been misleading prosecu-torial characterizations of the medical examiner’s testimony. According to the medical examiner, the shooter was most likely standing to the side of the victim when a series of shots, including the fatal one, was fired. N.T. 2/1/16 at 28-29; 6/5/12 at 188.
In his closing, the prosecutor argued that the medical examiner’s autopsy report was consistent with Mr. Hall’s testimony that Appellant jumped out the passenger side of a moving car after seeing the victim walk by and commenced gunfire:
PROSECUTOR: ' What did Dr. Williams testify to? She testified that gunshot wound A, thb fatal shot, was the shot that most likely began with the other gunshot wound on the arm. That trajectory. Why is that important?
Surprisingly enough, because what you saw on the other photograph: Ranay Vaughn was not shot in the back. He was shot in the side. Why? He was walking down Diamond Alley. The car goes by him. He hears the door open. He turned around, sees the defendant, [who] immediately fires.
The first shot hits him [victim] in the arm and going up in the upward trajectory. He’s starting to run away, probably stumbling. The shots are continuing at that point.
N.T. 2/1/16,'at 29 (quoting N.T. 6/8/12 at 60-61).
At the PCRA hearing, trial counsel defended his decision to refrain from objecting on grounds that the prosecutor had simply drawn a fair inference from " the evidence presented at trial. N.T. 2/1/16 at 28-29. Specifically, PCRA counsel suggested that the prosecutor had mischaracter-ized the medical examiner’s testimony that the shooter was standing next to the victim or to the side, to which trial counsel answered
TRIAL COUNSEL:- I think what [the prosecutor] was referring to was • the relationship between where the victim was standing and in relation to [defendant]. In other words, he [defendant] was standing to the victim’s right.
PCRA COUNSEL: Did you in your closing argument make any effort to clarify [the medical examiner’s] testimony to make sure the- jury -understood that according to [the medical examiner] the shooter was standing to the side— standing 'to the side of the victim when he was shot?
TRIAL COUNSEL: I cannot recall.
⅛ «⅜ ⅜
PCRA COUNSEL: One last question. Did you consider it important to point out to the jury Mr. Hall’s 'testimony about [defendant] jumping out of the car and chasing the victim while shooting was untrue?
⅝ ⅜* ’
TRIAL COUNSEL: [After asking counsel to repeat question]. Of course. We *49 deny that [defendant] was the shooter at all. We absolutely — our theory was Mr. Hall was the sole actor. Of course, we presented evidence and put on our theory of the case that Mr. Hall was the one that shot the gun, and Mr. Hall is the one that jumped out of the car.
* * *
TRIAL COUNSEL: [On the Commonwealth’s cross-examination, after his recollection was refreshed with an excerpt of his closing], I résponded to [the prosecution,] yes . [The essence of my argument was] that a couple of different scenarios could have played out. And I pointed out to the jury also that although [the medical examiner] was able to tell us that the actor was standing on the right-hand side of the torso, that the wounds — the entry wound was in an upward direction and were, as I basically eluded [sic] to, also consistent with Mr. Hall being the shooter from the driver’s side.
COMMONWEALTH: And is it fair to say the essence of this trial was the credibility of Mr. Hall versus Mr. Lawrence?
TRIAL COUNSEL: That was, in my mind, the million dollar question, whether the, jury believed Mr. Hall or Mr. Lawrence. There [were] only two people.
COMMONWEALTH: Is it fair to say the focus of the defense and the prosecution were the credibility of the witnesses?
TRIAL COUNSEL: I know my case it was for sure. And I believe for [the prosecutor] as well.
N/L 2/1/16 at 30-32.
Our review of thé record supports the PCRA court’s determination that no arguable merit attended this claim. In his closing argument, the prosecutor expressed a theory of the shooting that was consonant with the testimony of the medical examiner. As there was nothing misleading about the prosecutor’s closing, trial counsel cannot be deemed ineffective for failing to raise a meritless objection. See Cuevas, 832 A.2d at 394.
Finally, Appellant contends that the cumulative prejudice resulting from trial counsel’s multiple errors denied him a fair trial. While the Pennsylvania Supreme Court has stated that “no number of failed claims' may collectively warrant relief i[f] they fail to do so individually,” Commonwealth v. Rainey, 593 Pa. 67, 928 A.2d 215, 245 (2007), it has also recognized that “if multiple instances of deficient performance are found, the assessment of prejudice properly may be premised upon cu-mulation.” Commonwealth v. Johnson, 600 Pa. 329, 966 A.2d 523, 532 (2009). Here, we have adverted to prejudice principles in the disposition of just one out of seven claims of ineffectiveness. As there is, therefore, no cumulation of prejudice to consider, Appellant is entitled to no relief on this final claim.
Order is AFFIRMED.

. Commonwealth v. Lawrence, No. 3061 EDA 2012, unpublished memorandum (Pa.Super. filed August 9, 2013).

. The Suggested Standard Jury Instruction is:
First, you should view the testimony of an accomplice With disfavor because it comes from a corrupt and polluted source,
Second, you should examine the testimony of an accomplice closely and accept it only with care and caution.
Third, you should consider whether the testimony of an accomplice is supported, in whole or in part, by other evidence. Accomplice testimony is more dependable if supported by independent evidence. [However, even if there is no independent supporting evidence, you may still find the defendant guilty solely on the basis of an accomplice's ■testimony if, after using the special rules I just told you about, you are satisfied beyond a reasonable doubt that the accomplice testified truthfully and the defendant is guilty.]
Pa. SSJI (Crlm) 4.01.

. Appellant’s brief lacks a meaningful analysis of why the Cronic exception to the ineffectiveness test should apply, and to such extent this aspect of his claim is waived. See Commonwealth v. Furrer, 48 A.3d 1279, 1281 n.3 (Pa. Super. 2012) (issues not developed in an appellate brief with pertinent authority are waived, citing Pa.R.A.P. 2119(a)).

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).