**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES THOMPSON | : | |
| | : | |
| Appellant | : | No. 546 EDA 2021 |

Appeal from the PCRA Order Entered February 10, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007131-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES THOMPSON | : | |
| | : | |
| Appellant | : | No. 547 EDA 2021 |

Appeal from the PCRA Order Entered February 10, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007132-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES THOMPSON | : | |
| | : | |
| Appellant | : | No. 550 EDA 2021 |

Appeal from the PCRA Order Entered February 10, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007133-2011

J-A17012-22

BEFORE: PANELLA, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.: FILED SEPTEMBER 28, 2022

James Thompson files separate appeals from the orders dismissing his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). *See* 42 Pa.C.S.A. §§ 9541-9545. Additionally, Thompson's PCRA counsel, Coley O. Reynolds, Esquire, has filed an application to withdraw as counsel and a brief in accordance with *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). We grant Attorney Reynolds's petition to withdraw and affirm the orders denying Thompson's PCRA petition.[1]

On February 20, 2011, Thompson and an unidentified friend confronted brothers Scoey, Jermaine, and Bryan Potter at a bar in Philadelphia. During the encounter, Thompson threatened to kill the Potters. Subsequently, when the Potters attempted to leave the bar, Thompson stood by the exit and threatened to shoot Bryan. As a result, Bryan hit Thompson, knocking him to the ground, and threw Thompson's friend through the door. Bryan immediately left the scene. Thereafter, Scoey hit Thompson's friend and he and Jermaine jumped on Thompson's friend after he fell to the ground. Thompson then pulled out a gun and shot and killed Scoey, and shot Jermaine

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] This Court consolidated Thompson's appeals *sua sponte* on June 3, 2021.

- 2 -

in the stomach and leg, which resulted in paralysis of his left leg. Thompson's friend fled the scene and the police later arrested Thompson in possession of the gun used in the shooting. The Commonwealth charged Thompson with numerous crimes at three separate case numbers.

On September 21, 2012, a jury found Thompson guilty of voluntary manslaughter, aggravated assault, persons not to possess firearms, firearms not to be carried without a license, and terroristic threats. The trial court sentenced Thompson to an aggregate sentence of 17 to 34 years in prison. This Court affirmed Thompson's judgment of sentence. **See Commonwealth v. Thompson**, 349 EDA 2013 (Pa. Super. filed Aug. 19, 2014) (unpublished memorandum).

Thompson filed a timely *pro se* PCRA petition, and following the appointment of counsel, an amended PCRA petition at the three case numbers. Thompson raised various ineffective assistance of counsel claims. Following a protracted history not relevant to this appeal, the PCRA court held an evidentiary hearing, at which trial counsel testified. Subsequently, the PCRA court entered separate orders dismissing Thompson's petition. These timely appeals followed.[2]

On appeal, Attorney Reynolds filed a **Turner**/**Finley** brief, which raises the following questions for our review:

---

[2] Following the filing of the notices of appeal, Attorney Reynolds was appointed as Thompson's counsel for his PCRA appeals.

1.  Did the PCRA court commit an abuse of discretion by denying relief on a claim asserting that trial counsel was ineffective for failing to present evidence indicating that [Thompson's] friend, an alleged eyewitness, died following the incident herein?

2.  Did the PCRA court commit an abuse of discretion by denying relief on a claim asserting that trial counsel was ineffective for failing to object to the trial court's charge on the defense of justification?

3.  Did the PCRA court commit an abuse of discretion by denying relief on a claim asserting that trial counsel was ineffective for presenting inconsistent defense theories to the jury?

4.  Did the PCRA court commit an abuse of discretion by denying relief on a claim asserting that trial counsel was ineffective for failing to object to improper arguments comments and misstatements of law made by the prosecutor?

*Turner*/*Finley* Brief at 11-12 (some capitalization omitted). Additionally, Attorney Reynolds filed an application to withdraw on January 25, 2022.[3]

As an initial matter, we must consider the adequacy of Attorney Reynolds's *Turner*/*Finley* filings. Independent approval by competent counsel requires proof of the following:

1) A "no-merit" letter by PCRA counsel detailing the nature and extent of his review;

2) The "no-merit" letter by PCRA counsel listing each issue the petitioner wished to have reviewed;

3) The PCRA counsel's "explanation", in the "no-merit" letter, of why the petitioner's issues were meritless;

---

[3] Thompson did not retain alternate counsel or file any response to Attorney Reynolds's application to withdraw.

- 4 -

> 4) The PCRA court conducting its own independent review of the record; and
>
> 5) The PCRA court agreeing with counsel that the petition was meritless.

***Commonwealth v. Widgins***, 29 A.3d 816, 818 (Pa. Super. 2011) (citation and brackets omitted). Further, counsel seeking to withdraw must

> forward to the petitioner a copy of the application to withdraw that includes (i) a copy of both the "no-merit" letter, and (ii) a statement advising the PCRA petitioner that, in the event the trial court grants the application of counsel to withdraw, the petitioner has the right to proceed *pro se*, or with the assistance of privately retained counsel.

***Id.*** (citation omitted).

Here, in his ***Turner***/***Finley*** brief, Attorney Reynolds described the extent of his review, identified the issues that Thompson sought to raise, and explained why the issues lack merit. In addition, Attorney Reynolds provided Thompson with notice of his intention to seek permission to withdraw from representation, a copy of the "no-merit" brief and application to withdraw as counsel and advised Thompson of his rights in lieu of representation. Thus, we conclude that Attorney Reynolds has complied with the requirements necessary to withdraw as counsel. We now independently review Thompson's claims to ascertain whether they lack merit.

Our standard of review regarding a PCRA court's order "is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." ***Commonwealth v. Rizvi***, 166 A.3d 344, 347 (Pa. Super.

2017). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Garcia*, 23 A.3d 1059, 1061 (Pa. Super. 2011) (citation omitted).

In his first claim, Thompson contends that his trial counsel was ineffective for failing to present evidence that his unidentified friend died soon after the incident and was not available to testify at trial. *See Turner/Finley* Brief at 14. Thompson argues that the evidence would have prevented the jury from drawing an adverse inference against him for not calling his friend as a witness. *See id.* Thompson further assets that the prosecutor discussed the absence of the friend at trial during closing arguments. *See id.*

To succeed on an ineffectiveness claim, Thompson must demonstrate by a preponderance of evidence that "(1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction." *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018) (citation omitted). Counsel is presumed to be effective, and the burden is on Thompson to prove otherwise. *See Commonwealth v. Hanible*, 30 A.3d 426, 439 (Pa. 2011). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *See Commonwealth v. Montalvo*, 244 A.3d 359, 368 (Pa. 2021).

Here, at the evidentiary hearing, Thompson's trial counsel testified that he did not introduce evidence of Thompson's friend's death because Thompson

would have been required to testify at trial to identify the friend. ***See*** N.T., 1/6/21, at 8. Further, counsel noted that he did not want to introduce the way Thompson's friend was murdered—execution-style by two gunmen—stating that such evidence may have been prejudicial to Thompson. ***See id.*** at 8-9. Finally, counsel testified that he proposed a stipulation with the Commonwealth regarding the friend's unavailability, but that the Commonwealth declined. ***See id.*** at 9.

Here, the PCRA court found that counsel had a reasonable basis for not introducing evidence that Thompson's friend was unavailable at trial. ***See*** PCRA Court Opinion, 8/18/21, at 8. Upon our review, we cannot conclude the PCRA court abused its discretion. ***See Commonwealth v. Spotz***, 84 A.3d 294, 312 (Pa. 2014) (stating that a "finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." (citation omitted)).

Further, Thompson cannot establish that he was prejudiced by counsel's inaction. Indeed, Thompson claims that he acted in defense of his unnamed friend, who was being punched by the two victims. ***See*** 18 Pa.C.S.A. § 506(a) (stating that the use of force upon or toward the person of another is justifiable to protect a third person when the actor would be justified in using force to protect himself against the injury he believes to be threatened against the third party; the actor believes that the person whom he is protecting would

be justified in using such force; and the actor believes that his intervention is needed to protect the other person). However, as this Court noted on direct appeal, Thompson and his friend provoked the use of force by threatening the Potters, Thompson's friend was being punched by the victims, and there was no evidence to suggest that the use of a gun was needed to cease the attack. *See Thompson*, 349 EDA 2013, at *10. Even if Thompsons's friend "would have testified that [he] was genuinely in fear of imminent death or serious bodily injury during the altercation, that testimony would have had no bearing on [Thompson's] subjective belief." PCRA Court Opinion, 8/18/21, at 10. Accordingly, Thompson has not established the prejudice prong of the ineffectiveness test.

Finally, during closing arguments, the prosecutor only stated that Thompson's friend fled the scene and was not hurt and did not seek to draw any adverse inference from Thompson's failure to call the friend as a witness. *See* N.T., 9/21/12, at 85. Based upon the foregoing, Thompson did not establish counsel was ineffective, and his first claim is without merit.

In his second claim, Thompson contends that trial counsel was ineffective for failing to object to the jury instruction on justification. *See Turner/Finley* Brief at 17-18. Specifically, Thompson argues that the trial court's instruction erroneously failed to include Bryan, who punched Thompson and his friend in the bar. *See id.* at 18. According to Thompson, the inclusion of Bryan's name in the instruction may have rendered a different

verdict because the jury could have reasonably believed that Thompson believed that Bryan would attack his friend. *See id.*

"Where a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record." *Commonwealth v. Hairston*, 84 A.3d 657, 668 (Pa. 2014) (citation omitted). "[I]nstructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict." *Id.* (citation omitted).

The PCRA court addressed this claim as follows:

[The trial court] did not instruct the jury on whether [Thompson] believed he was protecting the unknown male from Bryan [] simply [] because Bryan [] was not on scene, let alone attacking the unknown male. The evidence presented at trial showed that Bryan [] was walking away when the unknown male re-initiated the fight with [Scoey] and [Jermaine]. Furthermore, Bryan [] testified at trial that he did not see the shooting, [and that] he only heard the gunshots.

PCRA Court Opinion, 8/18/21, at 10; *see also* N.T., 9/18/12, at 118, 175, 216, 227 (wherein evidence was presented that Bryan had left the area and was not present during the shooting).

Upon our review of the record and the instructions, we agree with the PCRA court's reasoning and find that the trial court properly did not include Bryan in the justification jury instruction. *See Hairston*, 84 A.3d at 668. Accordingly, we conclude that there is no arguable merit to Thompson's second ineffectiveness claim. *See* PCRA Court Opinion, 8/18/21, at 10.

In this third claim, Thompson argues trial counsel was ineffective for providing inconsistent defense theories to the jury. ***See Turner/Finley*** Brief at 19. Specifically, Thompson claims that during opening arguments, trial counsel indicated Thompson was guilty of either voluntary or involuntary manslaughter, but also that this was a justification case. ***See id.*** Thompson further highlights that during closing arguments, trial counsel argued Thompson was guilty of possessing an instrument of crime and carrying a firearm without a license, thus implying he was guilty of voluntary manslaughter. ***See id.***

The PCRA court rejected this claim, finding that trial counsel pursued a reasonable strategy:

> At trial, the Commonwealth argued to the jury that [Thompson] should be found guilty of first-degree murder. … Trial counsel's argument, as a whole, was that [Thompson] acted in defense of another and that his actions were reasonable. Counsel's alternative argument was that if the jury did not agree that [Thompson's] action[s] were reasonable, it could find voluntary manslaughter instead.
>
> Counsel was attempting to get [Thompson] out from under the very real possibility of a first-degree murder conviction and mandatory life sentence. The undisputed evidence presented at trial proved that [Thompson] initiated the incident and escalated the incident throughout. He was illegally armed and threatening to shoot Bryan []. He then followed the Potter brothers while they [were] leaving the bar to remove themselves from the confrontation and said to Bryan, "you are going to get popped." Additionally, there was undisputed evidence that the victims were not armed and that they were hitting [Thompson's] friend for five seconds after [Thompson's] friend put his hand in his waistband and threatened to put Bryan in a coffin. During this five second altercation, [Thompson] came outside and immediately fired a

gun four or five times directly at the victims, hitting them each twice in vital organs. …

Ultimately, trial counsel's strategy was successful. [Thompson] was convicted of voluntary manslaughter, avoiding a first-degree murder conviction and mandatory life sentence. Therefore, this claim fails.

PCRA Court Opinion, 8/18/21, at 11-12.

We agree with the sound reasoning of the PCRA court and affirm on this basis. *See id.*; *see also Commonwealth v. Daniels*, 104 A.3d 267, 292 (Pa. 2014) (stating that trial counsel's strategy to make alternative defense arguments at trial was reasonable because the burden of proof still rests with the Commonwealth). Additionally, Thompson cannot establish that he was prejudiced, as the trial court instructed the jury that the statements during opening and closing arguments did not constitute evidence. *See* N.T., 9/21/12, at 20-22, 99; N.T., 9/18/21, at 5-6, 11; *see also Commonwealth v. Purnell*, 259 A.3d 974, 986 (Pa. 2021) (stating that "[t]he law presumes that the jury will follow the instructions of the court.") (citation omitted). Based upon the foregoing, we conclude that Thompson's third ineffectiveness claim is without merit.

In his final claim, Thompson raises numerous arguments, which we will address separately. Initially, Thompson contends trial counsel was ineffective for failing to object to the prosecutor's bolstering of the lead police detective, wherein the detective stated that he had prepared a warrant and the prosecutor's office approved the warrant. *See Turner/Finley* Brief at 21-22.

"Improper bolstering or vouching for a government witness occurs where the prosecutor assures the jury that the witness is credible, and such assurance is based on either the prosecutor's personal knowledge or other information not contained in the record." ***Commonwealth v. Lawrence***, 165 A.3d 34, 42-43 (Pa. Super. 2017) (citation omitted).

Here, the testimony at issue was as follows:

Q. Detective, very briefly, can you explain the procedure for getting an arrest warrant.

A. Based on the initial report of what happened that's in the interview, the medical examiner's report who rules it a homicide and the information we obtained from the witnesses, at that point it is put in an affidavit. I actually take this information over to the District Attorney's Office. They will read it over and at that point, we will charge the Defendant.

Q. Do they make the decision whether to approve or not approve?

A. Approve or not approve the charges, yes.

Q. That procedure was done prior to receiving the affidavit of probable cause and the arrest warrant in this case?

A. That's correct.

Q. That is the same procedure for every homicide?

A. Yes.

N.T., 9/20/12, at 118-19.

The prosecutor did not improperly bolster the detective's testimony. Instead, the detective merely articulated the proper procedure for obtaining an arrest warrant in every murder investigation. Therefore, there is no arguable merit to Thompson's ineffectiveness claim for failing to object to the

prosecutor's statements. *See Lawrence*, 165 A.3d at 44 (concluding that because there was no arguable merit to appellant's vouching claim, trial counsel cannot be ineffective for failing to object to the prosecutor's remarks).

Thompson next asserts that counsel was ineffective for failing to object to several comments by the prosecutor during her closing argument, such as using the phrases "stamp of approval" and "unclean hands." *Turner*/*Finley* Brief at 22 (citing N.T., 9/21/12, at 63, 64, 71, 79). Thompson further claims that trial counsel was ineffective for failing to seek cautionary instructions regarding the prosecutor's closing argument. *See id.* at 21.

> It is settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. However, the prosecutor may comment on the credibility of witnesses. Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor. If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility.

*Lawrence*, 165 A.3d at 43 (citation omitted). Further, "[a]ny challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1146 (Pa. 2011) (citation and emphasis omitted).

Here, Thompson challenges this portion of the prosecutor's closing argument:

> Voluntary manslaughter and self-defense, in general, is asking you to put a stamp of approval on [Thompson's] actions but the law takes these situations very seriously….

- 13 -

> It is not justified unless you can prove that he's met certain requirements because taking a life is so serious, that we want to make sure that if we are going to give it that stamp of approval, that certain aspects are met….

N.T., 9/21/12, at 63-64. Thompson's trial counsel objected to the prosecutor's statements in this regard, and the trial court sustained the objection. *See id.* at 64-65. The prosecutor continued:

> … if you find that [Thompson] didn't have clean hands or in any way provoked the fight, threatened their lives, pursued the Potters and the shooting resulted from those actions, then voluntary manslaughter doesn't apply….

> [V]oluntary manslaughter and self-defense do not apply because he doesn't meet those very important requirements that will put a stamp of approval on those actions…. He does not get a stamp of approval and murder applies.

*Id.* at 71, 79.

At the PCRA evidentiary hearing, trial counsel stated that he did not object to all the prosecutor's use of "stamp of approval" because he did not believe she had crossed a line and that if the trial court had overruled the objection, it would have been damaging to Thompson. *See* N.T., 1/6/21, at 14, 17-18.

Here, Thompson fails to establish that counsel did not have a reasonable basis for declining to object to all the prosecutor's statements. In any event, we agree with the PCRA court's finding that the prosecutor's statements were oratorical flair. *See* PCRA Court Opinion, 8/18/21, at 14; *see also* ***Commonwealth v. Tedford***, 960 A.2d 1, 33 (Pa. 2008) (stating that the "prosecution's statements are unobjectionable if they are based on the

evidence or proper inferences therefrom, or represent mere oratorical flair." (citation omitted)).

Moreover, as noted above, the trial court instructed the jury that the attorneys' statements during closing argument did not constitute evidence. *See* N.T., 9/21/12, at 20-22, 99; *see also Purnell*, 259 A.3d at 986. Indeed, the trial court instructed the jury on the relevant charges and self-defense and indicated that the jury must follow the law as stated by the court. *See* N.T., 9/21/12, at 22, 94, 97-99, 113-43, 153-58. Accordingly, Thompson cannot establish that he was prejudiced by trial counsel's failure to object or seek a cautionary instruction, and this ineffectiveness claim is without merit.

Thompson also argues that the prosecutor gave personal assurances that Bryan and Jermaine were credible witnesses during her closing argument. *See Turner*/*Finley* Brief at 22.

Thompson's challenge in this regard focuses on this portion of the prosecutor's closing argument:

> We don't have [video evidence] but you don't need it to make a decision in this case because you have multiple, credible witnesses and I am talking mainly about Jermaine and Bryan [] who from the very beginning, the good, the bad, told you what happened that night, admitted to not only some acts by themselves, the punching but also credibly told you about why they did it, and it makes sense.

N.T., 9/21/2012 at 90.

Here, the prosecutor did not offer any personal assurances about the testimony of Jermaine and Bryan; instead, she merely summarized their

testimony and commented on the portions of their testimony that established their credibility. Because the prosecutor did not improperly bolster or vouch for the testimony in question, trial counsel cannot be ineffective. *See Lawrence*, 165 A.3d at 44.

Thompson additionally argues that counsel should have objected to the prosecutor's statements regarding the crime of voluntary manslaughter. *See Turner/Finley* Brief at 22 (citing N.T., 9/21/12, at 62-63, 66, 68, 75). Thompson claims that the prosecutor's statements limited the jury's ability to find him not guilty and risked confusing the jury in a way that it could not appropriately weigh the evidence. *See id.*

The PCRA court reviewed the prosecutor's statements and found Thompson's ineffectiveness claim to be without merit:

> First, this claim fails because trial counsel clearly did object [to two statements made by the prosecutor]. Moreover, [Thompson] was not prejudiced by the [prosecutor's] statements because the law was made clear to the jury prior to deliberations. To be clear, the [prosecutor] did not misstate the law, she gave an incomplete statement of the law which was corrected by the [trial ]court; once during closing arguments and then in the [trial] court's charge on the law. Moreover, before closing argument, the [trial c]ourt informed the jury that they are not bound by any principles of law mentioned by counsel in their closing argument. Instead, they are bound by the law as the [trial c]ourt gives it at the end of closing arguments. *See* N.T., 9/21/2012 at 22. The law is well settled that the jury is presumed to have followed the court's instructions. The jury had a full and complete understanding of the applicable law in this case prior to deliberating, despite the [prosecutor's] lack of clarity. Therefore, this claim lacks merit.

PCRA Court Opinion, 8/18/21, at 13 (quotation marks and citation omitted).

We agree with the PCRA court's opinion and affirm on this basis. ***See id.*** Indeed, as the PCRA court noted, the trial court gave an accurate statement of the law during its jury charge, and Thompson does not argue that this recitation was incorrect. ***See*** N.T., 9/21/12, at 113-43, 153-58. Based upon the foregoing, Thompson's final ineffectiveness claim is without merit.

Upon our independent review of the record, we conclude that the PCRA petition is without merit, and that Attorney Reynolds is entitled to withdraw under the precepts of ***Turner/Finley***.

Application to Withdraw as Counsel granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2022