J-A11009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZACHARY ROBERT HENRY | : | |
| | : | |
| Appellant | : | No. 1756 WDA 2019 |

Appeal from the Judgment of Sentence Entered July 3, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0012193-2018

BEFORE:  McLAUGHLIN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: AUGUST 19, 2021**

Zachary Robert Henry appeals from the judgment of sentence imposed on his convictions for Burglary, Criminal Conspiracy, Criminal Trespass, Criminal Mischief, Theft, and Receiving Stolen Property.[1] He challenges the sufficiency and weight of the evidence. We affirm.

At Henry's bench trial in March 2019, Detective Sergeant Joseph Brace testified that in November 2017 he assisted in the investigation of a burglary and learned that the victim had reported multiple items missing, including two diamond rings, a silver necklace, and gold jewelry. **See** N.T. Trial, 3/20/19, at 8, 14, 30. He determined that several of the items had been sold to Steel City Gold Buyers ("Steel City"). **Id.** at 8-9. The seller of the jewelry was Caelan Klingeman. **Id**. at 15.

_____

[1] 18 Pa.C.S.A §§ 3502, 903, 3503, 3304, 3903, and 3925, respectively.

On cross-examination, Detective Brace acknowledged that Klingeman had a history of drug addiction, had recently been released from a rehabilitation facility, had a history of theft, and was on probation at the time of the burglary. *Id.* at 17-19, 21. He said he interviewed Klingeman, who was initially evasive and said that another person, not Henry, had given her the jewelry. *Id.* at 19, 20, 21 25. However, Detective Brace said that in a subsequent interview, Klingeman was more cooperative and admitted that she and Henry had committed the burglary and gave police Henry's telephone number.

A second police officer, Detective Reginald Humbert, then testified that police used the phone number to identify Henry's general location at the relevant times. *Id.* at 55. He said they confirmed that the number was related to Henry and executed a warrant for cell site activation records. He said there were seven activations at a tower located approximately 1.5 miles from the victim's residence at the time of the burglary. *Id.* at 58. That same day, there were additional activations on the same block as Steel City at 10:45 a.m. and at a second tower 1.5 blocks away at 10:48 a.m. *Id.* at 55-57. Detective Humbert conceded that activations show that a user was in the vicinity of the tower and not necessarily directly beside it. *Id.* at 55. He also said that while the activations do not give an exact location, as the activation can "skip" a tower, they give a general location. *Id.* at 55, 58.

Klingeman also testified and implicated Henry. She said that Henry picked her up and after driving around Moon Township, he picked a house to

burglarize. *Id.* at 36. She admitted that while Henry committed the burglary, she stayed in the car and acted as a "lookout." *Id.* She said Henry returned about a half hour later with money, electronics, and jewelry. They then went to Steel City, where she pawned the jewelry as Henry "couldn't use his ID to pawn the jewelry." *Id.* at 37. Klingeman also testified that she was a drug addict in recovery and has a history of theft. *Id.* at 39-41. Klingeman stated that when she agreed to be interviewed by police, she was still facing charges and there was no agreement to withdraw her case. *Id.* at 42-43. Klingeman conceded, however, that the Commonwealth later agreed to reduce her three felony charges to misdemeanors in exchange for her testimony. *Id.* at 34.

Henry testified in his own defense and offered an alibi. He said he was moving items from his storage locker to his house during the time the crime occurred. *Id.* at 70. He stated that he borrowed a car from his girlfriend, Helen Henkin, whom he dropped off at the Air Force Base near Moon Township around 5:00 a.m. and picked her up around 4:00 p.m. *Id.* at 68.

Regarding his interaction with Klingeman, he testified that around 8:15 a.m., he received a call from Klingeman indicating that she was stranded in Moon Township. *Id.* at 69. He said she asked if he would give her a ride and said she would pay him. *Id.* He met her at a McDonald's and, after having something to eat, they went to Steel City so that she could sell some jewelry to get the money to pay Henry. Henry stated he was with Klingeman for about an hour and a half. *Id.* at 69-70. Henry said he then "again proceeded to take stuff back and forth to [his] storage locker until it was time for [him] to go get

- 3 -

Helen," which was "around 4:00." *Id.* at 70. In Henry's view, Klingeman was lying in an attempt to receive a lesser sentence. *Id.* at 72.

The trial court found Henry guilty of the above-referenced crimes and sentenced him in total to six to 12 years' imprisonment followed by five years' probation. Henry filed a post-trial motion asking the court to reconsider its finding of guilt and challenging, in part, the reliability of Klingeman's testimony. The trial court denied the motion. Henry filed a timely appeal.[2]

Henry raises the following issues:

> [1.] Inasmuch as the sole witness who connected defendant with the burglary was a participant in it, gave inconsistent stories, had a history of *crimen falsi*, and benefited by testifying, was the evidence sufficient to support the verdict?
>
> [2.] Assuming sufficiency, was the verdict against the weight of the evidence for the reasons stated above?

Henry's Br. at 4.

In his first issue, Henry claims the evidence was insufficient to establish his involvement in the offenses. He notes that Klingeman was the sole witness to connect him with the crimes and maintains that her testimony was too unreliable to be sufficient to provide the connection, as a matter of law. He points out that even according to her own testimony, she was a participant in the crimes, had a history of crimes involving dishonesty, and benefited by

_____

[2] Henry's counsel filed a Motion to Withdraw as Counsel on July 25, 2019. He did not complete the docketing statement, with the result that the appeal was dismissed on September 16, 2019. On October 30, 2019, following remittal, the trial court reinstated Henry's appellate rights and appointed new counsel. The instant appeal was filed on November 26, 2019.

testifying. He adds that she gave inconsistent stories. Henry argues that although the phone records placed him on or near the same block as Steel City, that establishment is in downtown Pittsburgh on a well-traveled street near other retail establishments. He thus claims the evidence was as consistent with innocence as with guilt. *Id.* at 11.

A challenge to the sufficiency of the evidence requires us to determine whether the evidence supports every element of the crime charged beyond a reasonable doubt. ***Commonwealth v. Forrey***, 108 A.3d 895, 897 (Pa.Super. 2015). As sufficiency of the evidence is a question of law, our standard of review is *de novo*. ***Id.*** Our scope is limited to a review of the record evidence, which we view in the light most favorable to the Commonwealth, as verdict-winner. ***Id.***

In conducting this review, we do not assess the credibility of witnesses or the weight of the evidence. Those questions are within the sole purview of the finder of fact. ***Id.*** However, if the evidence is so inherently unreliable that a verdict based on it could be no more than surmise or conjecture, the sufficiency challenge has merit. ***Commonwealth v. Karkaria***, 625 A.2d 1167, 1170 (Pa. 1993).

Henry cites ***Karkaria*** to maintain that the evidence here, including Klingeman's testimony, was too tenuous to support a finding that he was involved in the crimes, as a matter of law. We disagree. The rule Henry cites is traditionally formulated as stating that whether the evidence proved guilt beyond a reasonable doubt is for the finder of fact "unless the evidence be so

weak and inconclusive that as matter of law no probability of fact can be drawn from the combined circumstances." **Commonwealth v. Libonati**, 31 A.2d 95, 97 (Pa. 1946) (citation omitted), *cited with approval in* **In Int. of J.B.**, 189 A.3d 390, 409 (Pa. 2018).

The arguments Henry makes do not go so far as to show that the evidence was "so weak and inconclusive that as matter of law no probability of fact can be drawn from the combined circumstances." **Id.** Rather, he offers reasons for not crediting the Commonwealth's position. Such arguments are for cross-examination or argument. They do not render the evidence insufficient as a matter of law.

Our review reveals that the evidence was sufficient. The trial court found Klingeman credible, and it relied on her testimony and the phone records when finding Henry guilty. As to the phone records, the court explained:

> The [phone] records were particularly significant in light of [Henry]'s testimony that he received a call from Klingeman at 8:15[] in the morning to come pick her up in Moon Township and. . . then took her to Steel City so that she could conduct some business and then dropped her off at the bus station and that he believed that all of this occurred in an hour and one half. This would have meant that his involvement with Klingeman ended by 9:45 a.m., or an hour before the first tower activation for Steel City. It was undisputed that Klingeman was the individual who made the sales to Steel City and that based upon [Henry]'s phone records, they would have had to occur sometime between 10:45 and 10:48 a.m. on November 20, 2017.

1925(a) Op. at 8-10. Henry's sufficiency challenge fails.

In his second argument, Henry claims the verdict was against the weight of the evidence. Our standard of review of a weight claim is:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-1055 (Pa. 2013). Further,

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Orie*, 88 A.3d 983, 1015 (Pa.Super. 2014).

"Accomplice testimony should be viewed with disfavor because it comes from a corrupt and polluted source and . . . it should be accepted with care and caution." *Commonwealth v. Lawrence*, 165 A.3d 34, 45 (Pa.Super. 2017). "[S]uch testimony may be more dependable if supported by independent evidence but . . . 'even if there is no independent supporting evidence,' a defendant may still be found guilty 'solely on the basis' of an accomplice's testimony if, after applying the aforementioned rules, the fact

finder is 'satisfied beyond a reasonable doubt that the accomplice testified truthfully and the defendant is guilty.'" ***Id.*** (quoting Pa.SSJI (Crim) 4.01).

Here, the trial court found Klingeman's testimony credible, noting that her testimony must be received with caution, as it is from a co-conspirator. Nonetheless, it found it "more reliable" because it was "supported by independent evidence" – the phone records. 1925(a) Op. at 9. The court thus concluded that "the evidence show[ed] Klingeman's recital of the facts comported with Henry's phone records." ***Id.*** at 10. It noted that it "was aware that Klingeman was a drug addict and had recently left rehabilitation and did not want to be facing a felony burglary and drug charge and had sought leniency in exchange for her testimony." ***Id.*** However, it concluded that "the records provide the independent source for determining her credibility and [it] relied upon those records and her testimony when making a determination that Henry was guilty." ***Id.***

We perceive no abuse of discretion. Credibility was for the court, as factfinder, and we will not disturb its credibility findings on appeal. The court considered Klingeman's testimony, in light of the other testimony and evidence admitted at trial, and found Henry guilty of the crimes at issue. It was not an abuse of discretion to deny the challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 48/19/2021