J-S34002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD EUGENE KING | : | |
| | : | |
| Appellant | : | No. 409 WDA 2022 |

Appeal from the Judgment of Sentence Entered March 9, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0013383-2017

BEFORE: LAZARUS, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.: **FILED: December 8, 2023**

Donald Eugene King appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County, after a jury convicted him of one count each of first-degree murder,[1] robbery,[2] conspiracy - robbery,[3] carrying a firearm without a license,[4] and criminal trespass,[5] and two counts

---

[1] 18 Pa.C.S.A. § 2502(a).

[2] *Id.* at § 3701(a)(1)(iii).

[3] *Id* at § 903.

[4] *Id.* at § 6106(a)(1).

[5] *Id.* at § 3503(a)(1)(i).

of burglary—overnight accommodations and person present.[6]   After careful

consideration, we affirm.

The trial court set forth the facts of the case as follows:

[O]n August 6, 2017[,] at approximately 10:41 p.m., [King] and his accomplices went to a residence located at 208 Conestoga Road in Penn Hills, Allegheny County, Pennsylvania[,] to rob Kevin Trowery.  [King] and his two accomplices were seen fleeing the back door of the residence and Penn Hills police officers began pursuit.  [King] was arrested after a short pursuit.  During the course of the investigation[,] detectives recovered [] surveillance videos of the entire incident.  The videos d[epicted] the victim exit[] his residence and st[and] on the front porch.  [King] and his two accomplices can be seen running toward the victim.  The victim attempted to fight off the three actors.  [King], with a firearm in his hand, shot the victim.  The victim fell to the ground and the three actors, including [King], beat the victim while he was on the ground.  [King] then fired two more shots into the victim's body.  The victim died as a result of multiple gunshot wounds.  The three actors then entered the victim's residence. They are observed seconds later exiting the residence and dragging the victim's body into the residence.

Trial Court Opinion, 11/30/22, at 2.

Following a joint trial with co-defendant-brother, DeVante King, King

was convicted of the aforementioned offenses.[7][8]  On March 9, 2022, the court

sentenced King to the mandatory minimum sentence of life imprisonment for

_____

[6] *Id.* at §§ 3501(a)(1)(i) (overnight accommodations; person present; bodily injury), (ii) (overnight accommodations; person present).

[7] The court granted the defendant a judgment of acquittal on the charge of fleeing and eluding.

[8] The third actor, Dustin Taylor, entered a guilty plea in the instant matter and agreed to testify against King and DeVante in exchange for the Commonwealth agreeing not to seek a life without parole sentence.  *See* N.T. Jury Trial, 12/6/21, at 16.

first-degree murder. The court imposed consecutive terms of 60-120 months'

imprisonment for robbery and one of the burglary offenses, 90-180 months'

imprisonment for conspiracy - robbery, and 3½-7 years' imprisonment for the

firearm conviction. No further penalty was imposed on the remaining counts.

King filed a timely notice of appeal and a court-ordered Pa.R.A.P.

1925(b) concise statement of errors complained of on appeal. King raises the

following issues for our review:

> (1) The evidence presented at trial was insufficient to sustain King's convictions for [b]urglary-[o]vernight [a]ccommodations[;] [p]erson [p]resent at counts 3 and 4[—]because it was quantitatively and/or qualitatively insufficient to support a finding that a person was present in the dwelling where the victim was located on his porch at the time of the event. *Accord*, *In the Interest of J.B.*, 189 A.3d 390 (Pa. 2018).
>
> (2) The trial court erred and/or abused its discretion in amending the standard jury instruction 4.01 regarding accomplice testimony as it misstates the circumspection the jury should properly have given to the testimony of Dustin Taylor.

Appellant's Brief, at 6.

King contends that because the victim was not **inside** his residence at

the time of the offense, the structure was not "occupied" for purposes of

proving the crime of burglary.

The Crimes Code defines burglary, in relevant part, as:

a) Offense defined. A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

> (1)

> (i) enters a building or **occupied structure**, **or separately secured or occupied portion thereof**, that is adapted for overnight accommodations **in which at the time of the offense any person is present** and the person commits, attempts[,] or threatens to commit a bodily injury crime therein;
>
> (ii) enters a building or occupied structure, **or separately secured or occupied portion thereof** that is adapted for overnight accommodations **in which at the time of the offense any person is present**[.]

18 Pa.C.S.A. § 3502(a)(1)(i), (ii) (emphasis added). We review King's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Callen*, 198 A.3d 1149, 1167 (Pa. Super. 2018) (citations and quotation marks omitted).

In *Commonwealth v. Jackson*, 585 A.2d 533, 535 (Pa. Super. 1991), the defendant had been convicted of burglary, among other offenses, after

- 4 -

entering the front door of a residence while the owner was seated on the back porch. On appeal, our Court held that a porch attached to a residence is part of the "structure" for purposes of assessing an offense gravity score (OGS) to the defendant's burglary conviction. Because a burglary that carries an OGS of 7 requires that the burglarized structure be "adapted for overnight accommodation in which the time of the offense **any person is present**," *id.* at 354 (emphasis added), the Court's holding in **Jackson** necessarily assumes that the Commonwealth had proven that the owner-victim was, in fact, present when the offense occurred. *See also Commonwealth v. Forman*, 241 A.3d 467 (Pa. Super. filed Oct. 27, 2020)[9] (unpublished memorandum decision) (even though victims "tried to enter home" while it was being burglarized, and then immediately retreated to their car, section 3502(a)(1) burglary conviction upheld).

King admits in his appellate brief that "[t]he incident occurred outside" the victim's residence. Appellant's Brief, at 14. In fact, video surveillance of the crime shows the victim standing on the front porch[10] of his home when

_____

[9] *See* Pa.R.A.P. 126(b) (non-precedential decisions filed after May 1, 2019, may be cited for persuasive value).

[10] Responding officers testified that the victim's two-story residence had a "side porch that went up steps." N.T. Jury Trial, 12/6/21, at 63. *See also id.* at 89 (officer testifying on cross-examination he "observed people coming down the side steps of the residence" when he arrived at scene). When the officer arrived on the scene, he observed King and his accomplice(s) emerge from the victim's home, "c[o]me out the door and c[o]me down the steps on the side of the residence." *Id.*; *see also id.* at 92 ("And that's the stairwell
*(Footnote Continued Next Page)*

the three assailants, wearing dark-colored clothing and facial coverings, run toward him and point a firearm at him. The victim attempts to fight off the three men with a broom; however, during the struggle, one of the assailants fires a round at the victim, striking him in the leg. The victim falls down and is beaten by the three men. The assailant with the gun then fires two more shots, one grazes the victim and the final shot, to the victim's chest, fatally wounds him. The three men then enter the victim's residence, exit the residence several seconds later, and drag the victim back into his home through the front door. *See* Commonwealth Exhibit III (video surveillance footage from 208 Conestoga Road).

The fact that the victim was on the porch when King entered the residence and burglarized the home supports the finding that the dwelling was occupied. We decline to interpret section 3502 in a hyper-technical way, where doing so would defeat the purpose of the statute. In short, "violence [was] equally present" whether the victim was just inside the front door of the residence or merely feet away on its porch at the time of the crime. ***Commonwealth v. Stepp***, 652 A.2d 922, 924 (Pa. Super. 1995) ("'[T]he

_____

on the side of 208 Conestoga that you observed the three individuals."). One of King's arresting officers testified regarding the appearance of the victim's front porch, specifically recognizing that the porch was on the side of the house and had steps coming off it that led down to the residence's surrounding yard. *See* N.T. Jury Trial, 12/6/21, at 64-65 (perpetrators "ran down the steps [from the porch] and fled towards the back of the residence[, and after following them to the back of the house, officer] saw three of the individuals . . . running down Conestoga Road toward the dead-end."). Moreover, the Commonwealth entered into evidence pictures of the residence, as well as the side and rear yards of the home. *See* Commonwealth Exhibits 5-11.

likelihood for greater' mischief and violence is equally present both when a person returns to their residence and discovers an intruder and when a person [who is] already within the home discovers an intruder."); **see also id.** at 923 (Pa. Super. 1995) (where homeowner entered mobile home at time of burglary, Court found "a technical application of the definition of burglary missed the purpose and spirit which underline the different offense gravity scores. . . . A potentially violent encounter exists whenever a person discovers an intruder inside his home.").

Because the victim was on the porch, which was part of the home's structure, the dwelling was occupied for purposes of proving burglary under section 3502(a). **See** 18 Pa.C.S.A. §§ 3502(a)(1)(i)(ii); **Callen**, **supra**. Thus, we find no merit to this claim.

In his second and final issue, King contends that the trial court abused its discretion when it amended the standard jury instruction for accomplice testimony[11] causing the instruction to "fail[] to explain to the jury accurately

_____

[11] The Suggested Standard Jury Instruction for accomplice testimony is:

> *First*, you should view the testimony of an accomplice with disfavor because it comes from a corrupt and polluted source.

> *Second*, you should examine the testimony of an accomplice closely and accept it only with care and caution.

> *Third*, you should consider whether the testimony of an accomplice is supported, in whole or in part, by other evidence. Accomplice testimony is more dependable if supported by independent evidence. [However, even if there is no independent supporting evidence, you may still find the defendant guilty solely

*(Footnote Continued Next Page)*

how they should access accomplice testimony."[12]  Appellant's Brief, at 12.
More specifically, King contends that the jury should have been instructed that
accomplice Taylor's testimony "had to be considered with caution because an
accomplice may place blame on another."  *Id.* at 16.[13]

The standard charge for accomplice testimony is commonly referred to
as "the corrupt and polluted source charge." ***Commonwealth v. Lawrence***,
165 A.3d 34, 44 (Pa. Super. 2017).  "The corrupt source charge[,] in
particular[,] is designed specifically to address situations where one
accomplice testifies against the other to obtain favorable treatment.  It directs
the jury to view the testimony of an accomplice with disfavor and accept it
only with care and caution." ***Commonwealth v. Smith***, 17 A.3d, 873, 906
(Pa. 2011).

_____

on the basis of an accomplice's testimony if, after using the special
rules I just told you about, you are satisfied beyond a reasonable
doubt that the accomplice testified truthfully and the defendant is
guilty.]

Pa. SSJI (Crim) 4.01 (italics and brackets in original).

[12] The Commonwealth, too, suggested the standard jury instruction for
accomplice testimony in its proposed instructions.

[13] King preserved this issue by objecting to the omitted language he suggested
for accomplice testimony.  ***See*** Pa.R.Crim.P. 647(C); ***see also*** N.T. Jury Trial,
12/10/21, at 988-89 (defense counsel noting objection on record that court
removed following language:  "Experience shows that an accomplice, when
caught, may often try to place blame falsely on someone else."); ***id.*** at 989
(defense counsel objecting to court's removal of words "corrupt" and wicked"
when instructing jury that accomplice may testify falsely in hope of obtaining
favorable treatment or for some "corrupt or wicked motive.").

[A] trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. ***Commonwealth v. Charleston***, [] 94 A.3d 1012, 1021 (Pa. Super. 2014)[.] A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue.

***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa. Super. 2013).

Here, the trial court gave the following accomplice testimony instruction to the jury:

I have defined accomplice liability to you. I have indicated that a person is an accomplice of another person in the commission of a crime if he or she has the intent to promoting or facilitating the commission of that crime, solicits the other person to commit it, or aids or agrees or attempts to aid or agree[—]excuse me, or attempts to aid the other person in committing the planning. An accomplice is a person who knowingly and voluntarily cooperates with or aids another person in committing an offense.

**When a Commonwealth witness is an accomplice, his or her testimony has to be judged by special precautionary rules. He or she may testify falsely in the hope of obtaining favorable treatment or for some other motive.** On the other hand, an accomplice may be a truthful witness.

The special rules that I will give you are meant to help you distinguish between truthful and false accomplice testimony.

In view of Dustin Taylor's testimony, you must decide whether Dustin Taylor was an accomplice of the crimes charged. **If, after considering all of the evidence, you find that he was an accomplice, then you must apply the special rules to his testimony.** Otherwise, you would ignore those rules.

Use this test to determine whether Dustin Taylor was an accomplice. Again, an accomplice is a person who knowingly and voluntarily cooperates with and/or aids in the commission of a crime.

**Special rules that apply to accomplice testimony are these: First, you should view the testimony of an accomplice with**

**disfavor because it comes from a corrupt and tainted source; second, you should examine the testimony of an accomplice closely and accept it only with care and caution; third, you should consider whether the testimony of an accomplice is supported in full or in part by other evidence.**

Accomplice testimony is more dependable if it is supported by independent evidence. However, even if there is no independent supporting evidence, you may still find the Defendant guilty solely on the basis of an accomplice's testimony if[,] after using these special rules I've just told you about, you are satisfied beyond a reasonable doubt that the accomplice testified truthfully and the Defendant is guilty.

**Again, the special rules are, first, you should view the testimony of the accomplice with disfavor because it comes from a corrupt and tainted source.** And second, you should examine the testimony of an accomplice closely and accept it only with care and caution.

Separate and apart from the fact of whether that witness was an accomplice, **you should examine closely and carefully and receive with caution the testimony of Dustin Taylor if you find he has provided testimony with the intent to receive a benefit after giving that testimony.**

You've also heard that Dustin Taylor has been convicted of a crime. The purpose for which you may consider the prior conviction is in deciding whether or not to believe him, all or part of his testimony. In doing so, you may consider the type of crime he committed, and how it may affect the likelihood that he has testified truthfully in this case.

You've also heard evidence that certain witnesses, Dustin Taylor among them, made statements on earlier occasions that were inconsistent with his present testimony. First of all, you, the jury will determine whether the statements were inconsistent. Secondly, if you do find that, you may, if you choose, regard that as evidence, that is, the prior inconsistent statement, of the truth of anything that the witness said in the earlier statement. You may also consider that evidence to help you judge the credibility and weight of the testimony given to you in this trial.

N.T. Jury Trial, 12/10/21, at 1102-06 (emphasis added).

Based on the highlighted language above, we are not persuaded by King's argument that the trial judge's accomplice testimony instruction was "inadequate, not clear[,] or ha[d] a tendency to mislead or confuse, rather than clarify, a material issue [for the jury]." *Sandusky*, *supra* at 667. Rather, the instruction clearly advised the jury that if they found Taylor was King's accomplice, they were required to receive his testimony with disfavor because it came from a corrupt and tainted source who may testify falsely to receive favor. *See Smith*, *supra* at 906 ("In any case where an accomplice implicates the defendant, the judge should tell the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution.").

Moreover, the judge instructed the jury that they could consider Taylor's prior conviction and whether, based on the crime he committed and how long ago he committed it, it would affect Taylor's ability to testify truthfully. *Id.* at 1105. The court also reminded the jury that Taylor had made inconsistent statements (before and during trial) and that it was up to the jury to determine the weight and credibility of Taylor's trial testimony. *Id.* at 1106. Finally, the court gave a detailed instruction on judging the credibility of witnesses, stating:

> As judges of the facts, you are the sole judges of the credibility of witnesses and their testimony. This means you must judge the truthfulness and accuracy of each witness's testimony and decide whether to believe all[,] part[,] or none of that testimony.
>
> The following are some of the factors that you should and may consider when judging credibility, deciding who to believe, what

testimony to believe or not: Was the witness able to see, hear, or know the things about which he testified; how well could the witness remember and describe the things about which he or she testified; did the witness testify in a convincing manner; how did he or she look, act, and speak while testifying; was his or her testimony uncertain, confused, self-contradictory or evasive; did the witness have any interest in the outcome of the case; did the witness have any bias, prejudice, or other motive that might affect his or her testimony; how well does the testimony of the witness square with the other evidence in the case, including the testimony of other witnesses; was it contradicted or supported by other testimony and evidence; did it make sense?

If you believe some part of the testimony of a witness to be inaccurate, consider whether the inaccuracy cast[s] doubt upon the rest of his or her testimony. This may depend on whether he or she has been inaccurate in an important matter or only a minor detail and on any possible explanation. For example, did the witness make an honest mistake or simply forget, or did he or she deliberately falsify [testimony].

While you are judging the credibility of each witness, you are likely to be judging the credibility of other witnesses or evidence. If there is a real irreconcilable conflict, it is up to you to decide which, if any, conflicting testimony to believe.

*Id.* at 1091-94. *Smith*, *supra* at 906 ("If the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness's testimony."). Accordingly, we find that the court's charge was not erroneous. *Sandusky*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>12/8/2023</u>