J-S08031-25                    2025 PA Super 96

COMMONWEALTH OF PENNSYLVANIA

v.

BRUCE A. BEATTY

    Appellant

: IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
:
:
:
:
:
:
:
:
:
:   No. 1982 EDA 2024

Appeal from the PCRA Order Entered July 8, 2024
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s):  CP-46-CR-0006956-2018

BEFORE:  DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY FORD ELLIOTT, P.J.E.:                    **FILED MAY 5, 2025**

Bruce A. Beatty appeals from the order[1] dismissing his timely first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. A jury found him guilty of attempted involuntary deviate sexual intercourse ("IDSI") with a child, aggravated indecent assault with a person less than thirteen years old, aggravated indecent assault of a child, indecent assault of a person less than thirteen years old, unlawful contact with a minor, and corruption of minors.[2] On collateral review appeal, Beatty asserts that his counsel was ineffective at four discrete points of his trial. After

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The docket reflects that delivery of the order dismissing Beatty's petition was mailed on July 8, 2024. We have amended the caption accordingly. ***See*** Pa.R.A.P. 108(a)(1), (d)(1).

[2] 18 Pa.C.S. §§ 901(a), 3125(a)(7), 3125(b), 3126(a)(7), 6318(a)(1), 6301(a)(1)(ii), respectively.

thorough review, we affirm.

As summarized by this Court in his direct appeal,

S.F., the victim in this case, was eleven years old when the incidents occurred. [Beatty] was S.F.'s mother's boyfriend at the time the assaults occurred. [Beatty] visited S.F.'s home approximately twice a month. S.F. lived with her brother, 25-year-old sister, and mother in a four-bedroom home at the time of the assaults.

A criminal complaint was filed against [Beatty] on August 20, 2018[.] alleging that [Beatty] committed acts of sexual misconduct against S.F. The Commonwealth charged [Beatty] with [the above-referenced offenses]. A jury trial commenced on July 17, 2019.

At trial, S.F. testified that she was currently 13 years old, in eighth grade and working at a summer camp as a counselor for kids. S.F. testified that there were three incidents involving [Beatty]. She stated that the first incident occurred approximately a year prior to trial. The first incident occurred in her mother's bedroom when [Beatty] touched her breast over her bathrobe. [Beatty] moved her to sit on his lap and touched her breast area.

S.F. testified the second incident also occurred in her mother's bedroom when [Beatty] offered to give her a massage, rubbed her back under her shirt, flipped her over[,] and touched her breasts with both his hands under her shirt and over her bra. She stated that [Beatty] began rubbing her vagina under her underwear and pulled his penis out and put her hand on it. [Beatty] also asked S.F. to put his penis in her mouth. S.F. testified that [Beatty's] penis felt hard and that a clear liquid came out of his penis when her hand was still on it. S.F. stated that her hand was moving up and down while her hand was on [Beatty's] penis. She testified that the third incident also occurred in her mother's bedroom. S.F. stated that her legs were in the air and [Beatty] asked if he could lick her vagina. S.F. testified that [Beatty] did not lick her vagina because she had to leave the house.

***Commonwealth v. Beatty***, 2021 WL 2769854, *1 (Pa. Super., filed July 2, 2021) (unpublished memorandum) (record citations omitted). After a jury

found Beatty guilty of the above-mentioned offenses, the court sentenced him to an aggregate ten to twenty years of incarceration. We affirmed his judgment of sentence, and our Supreme Court denied his petition for allowance of appeal. *See Commonwealth v. Beatty*, 271 A.3d 874 (Pa. 2022) (table).

Beatty filed the present petition, his first, on March 3, 2023. After an evidentiary hearing was held in which his trial counsel testified, the court denied Beatty's petition. Beatty timely filed an appeal from the court's denial of relief and, after being directed to do so, complied with Pennsylvania Rule of Appellate Procedure 1925(b).

On appeal, Beatty avers that his trial counsel was ineffective. Specifically, Beatty raises the following issues for our review:

1. Should trial counsel have objected to testimony that he did not return a phone call from the affiant and instead was seated next to counsel at trial because this testimony unfairly exploited his decision to remain silent in a case in which he did not testify?

2. Should trial counsel have objected to the prosecutor's opening and closing argument, which suggested that the Pennsylvania Legislature had specific opinions about this case in particular, that the Legislature wanted the jury to convict, and that the burden of proof was lower in sexual assault cases than in other types of criminal cases?

3. Did trial counsel provide ineffective assistance of counsel in failing to request the inconsistent statement jury instruction where counsel's entire defense at trial was that the complainant made inconsistent statements?

4. Should trial counsel have objected to the improper expert testimony from a former member of the prosecution team

regarding the "typical" behavior of alleged sexual assault victims because the expert was not qualified and the testimony was irrelevant, unfairly prejudicial, unreliable, and improperly bolstered the credibility of complainant?

*See* Appellant's Brief, at 4-5.[3]

"We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and are free of legal error." *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018). "When supported by the record, the PCRA court's credibility determinations are binding on this Court, but we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Id.*

Here, across all four questions presented, Beatty argues that his trial counsel was ineffective. Arguments of this nature invoke a well-settled standard of review from this Court:

With respect to claims of ineffective assistance of counsel, counsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary. To prevail, the petitioner must plead and prove, by a preponderance of the evidence, the following three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. With regard to the second prong (reasonable basis), "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." We will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative "offered a potential for success substantially greater than the course actually pursued." Our review of counsel's performance

_____

[3] The Commonwealth did not file a brief in this case.

"must be highly deferential." To establish the third element (prejudice), the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

**Brown**, 196 A.3d at 150–51 (internal citations omitted). A failure to satisfy any of the three prongs is fatal to the petitioner's claim that counsel was ineffective. **See id.** at 151; **Commonwealth v. Midgley**, 289 A.3d 1111, 1119 (Pa. Super. 2023).

In his first claim, Beatty suggests that his counsel should have objected to Detective Steven Henze's testimony, who was the investigating officer on his case. At trial, the following interaction took place:

Q. After the Mission Kids interview and the statements that you took, did your investigation take you anywhere else?
A. I tried to make – I called the defendant, who is seated here today next to counsel.
Q. And beyond that, did you move in any other directions?
A. I filed a criminal complaint against the defendant, yes.

N.T. Jury Trial, 7/18/19, at 179.

Beatty believes that Detective Henze's comment about the detective's pre-arrest attempt to call Beatty was in contravention of his constitutional right to remain silent and improperly suggested that he was guilty. We disagree.

At the PCRA hearing, Beatty's trial counsel testified as follows:

Q. And you did not object?
A. No.
Q. You didn't move for a mistrial?
A. Nope.
Q. And you didn't ask for any kind of special cautionary instruction?

- 5 -

A. No.

Q. Why not?

A. I mean, looking back at it - a number of reasons. First of all, it was pre-arrest; it was not post[-]arrest, so it was a pre-arrest comment. Second of all, it was clearly not elicited by the [Commonwealth]. It was a "What happened next," and the detective said, I tried to call the defendant and I filed a criminal complaint. Looking at it now, I still wouldn't have objected.

N.T. PCRA Hearing, 5/21/24 at 12-13.

We are persuaded by the PCRA court's rationale on this issue and adopt,

in full, its reasons as to why counsel was not ineffective in failing to object to

the detective's statement:

> Contextual and brief references to pre-arrest silence that "did not highlight Defendant's silence as evidence of guilt" are admissible. **Commonwealth v. Adams**, 104 A.3d 511, 518 (Pa. 2014) (plurality). The plurality reasoned that even though "the prosecution's second question emphasized Defendant's refusal to speak to the detectives[,]" the detective's testimony was not intended to imply a tacit admission of guilt, and it was thus admissible. **Id.** at 517-518.

> Pennsylvania case law makes a clear distinction between pre[-] and post-arrest silence. **See Commonwealth v. Rivera**, 296 A.3d 1141, 1149 (Pa. 2023); **see also Commonwealth v. DiNicola**, 866 A.2d 329, 33-37 (Pa. 2005); **see also Commonwealth v. Whitney**, 708 A.2d 471, 478 (Pa. 1998) ("Even an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt.").

> In **Commonwealth v. Whitney**, 708 A.2d 471, 478 (Pa. 1998), [our Supreme C]ourt stated that "a mere reference to pre-arrest silence does not constitute reversible error where the prosecution does not exploit the defendant's silence as a tacit admission of guilt[."] The Pennsylvania Superior Court has applied **Adams** to find no error where the prosecution does not exploit a defendant's silence as substantive evidence of guilt. **See Commonwealth v. Sanchez**, 2023 WL 5232956, at *3 (Pa. Super.[, filed Aug. 15,]

2023) (unpublished)[4]; **see also Commonwealth v. Oliemuller**, 299 A.3d 920 [(Pa. Super., filed May 23, 2023) (table)] (unpublished).

Detective Henze never testified whether Beatty remained silent or not. He only mentioned what he did. Similar to the defendant in **Adams**, [Beatty] was not yet charged when Detective Henze attempted to contact him. The Commonwealth did not highlight or exploit this testimony. [Beatty's] first claim of ineffectiveness of counsel for failure to object to Detective Henze's testimony is without merit. Trial counsel had no reasonable basis to object to the questions posed to Detective Henze or his responses.

PCRA Court Opinion, 8/23/24, at 3-4.

We add that the detective's testimony does not, by any measure, "emphasize [Beatty's] refusal to speak to" the detective. **Compare Adams**, 104 A.3d at 518 (describing that **Adams** was a "closer" call than suggested by Commonwealth "given that the prosecution's second question emphasized [d]efendant's refusal to speak to the detectives despite being aware that they were law enforcement personnel[]"). Here, there is no indicia that the detective identified himself as a law enforcement officer to Beatty or, even more fundamentally, communicated with Beatty. All the record establishes is that Detective Henze attempted to contact Beatty via a phone call, but nothing more. As such, given its place in the chronology of the detective's investigation, we conclude that the detective's testimony was "simply utilized to recount the sequence of the investigation," **id.**, and did not, therefore,

---

[4] Non-precedential decisions of this Court filed after May 1, 2019, may be cited for their persuasive value. **See** Pa.R.A.P. 126(b)(1-2).

"unconstitutionally burden [Beatty's] right against self-incrimination, because the reference was contextual and brief and did not highlight [his] silence as evidence of guilt." *Id.* Accordingly, counsel was not ineffective for having not objected to the detective's testimony.

Next, Beatty contends that the prosecutor misstated the law of 18 Pa.C.S. § 3106[5] by, *inter alia*, improperly suggesting that "the Pennsylvania Legislature had somehow weighed in on this particular case by eliminating any requirement that a sexual assault complainant's testimony be corroborated by other witnesses or evidence." Appellant's Brief, at 33.

During the Commonwealth's opening statement to the jury, the prosecutor stated as follows:

> This is not just the prosecutor talking to you about this either, preparing you to understand the evidence of this case. The Pennsylvania Legislature has contemplated this issue. And they passed a law that applies only to cases involving alleged sexual assaults and trials in these cases. It is in the form of a jury instruction. At the end of this trial, the [j]udge is going to talk to you about that jury instruction, but I want to make sure you understand it right now as you hear the evidence.

---

[5] 18 Pa.C.S. § 3106 indicates that "[t]he credibility of a complainant of an offense under this chapter[, sexual offenses,] shall be determined by the same standard as is the credibility of a complainant of any other crime. The testimony of a complainant need not be corroborated in prosecutions under this chapter. No instructions shall be given cautioning the jury to view the complainant's testimony in any other way than that in which all complainants' testimony is viewed." Beatty concedes that while "[h]istorically, courts often required corroboration of the complainant's testimony for the Commonwealth to meet its burden in [sexual assault] cases[,] . . . the legislature . . . remove[d] any such requirement" through passage of this statute. Appellant's Brief, at 35.

> In Pennsylvania[,] the word of the victim alone, if believed by the twelve of you, is sufficient to convict the defendant of every single crime that he is charged with. It is simple, but it is clear. And I want you all to understand that. The word of the victim alone is sufficient to convict the defendant of every single crime he is charged with, so says the Pennsylvania Legislature. And pursuant to the oaths you all took when you agreed to be part of this jury, I am asking you to apply that law and to uphold your oaths.

N.T. Jury Trial, 7/17/19, at 26-27. In his closing statement, the prosecutor reemphasized that the testimony of a complainant, standing alone, could satisfy the Commonwealth's burden in sexual assault cases. ***See id.***, 7/18/19, at 239. Nevertheless, the prosecutor went on to say that: (1) the complainant should be believed; (2) Beatty should be found guilty based solely on the complainant's testimony; and (3) the aforementioned "law" "only applies to sex crimes. The legislature contemplated this. They know the reality of these cases." ***Id.***

Distilled down, Beatty is arguing that the Commonwealth improperly emphasized the Pennsylvania Legislature's role in assigning the burden of proof in sexual assault cases, leading to a misstatement of the law. In particular, Beatty takes umbrage with what he contends was the prosecutor's implicit assertion that the law regarding a single complainant applies *only* to cases alleging sexual assault.

The PCRA court found Beatty's assertion unmeritorious, first by highlighting a recent unpublished decision of this Court:

> In ***Commonwealth v. Russell***, [2023 WL 315610] (Pa. Super.[, filed Jan. 19,] 2023) [unpublished memorandum], . . . the [C]ourt

addressed prosecutorial comments on 18 Pa.C.S. § 3106 and found no prosecutorial misconduct occurred. In **Russell**, the appellant alleged the trial court erred by allowing the prosecution to state that the testimony of a single witness, if believed by a jury, was sufficient to support a conviction. **Russell**, [2023 WL 315610,] *2. The [C]ourt found "[t]his is a correct statement of the law that, if believed by the fact finder, 'even the uncorroborated testimony of a single witness may alone be sufficient to convict a defendant.'" **Commonwealth v. Gilliam**, 249 A.3d 257, 268 (Pa. Super. 2021) (citation omitted); **see also** 18 Pa.C.S.[] § 3106 (providing that a complainant's testimony need not be corroborated in a prosecution for a sex offense)." [**Russell**, 2023 WL 315610, *2.] The **Russell** [C]ourt found that even if the appellant had not waived his claim, the reference to 18 Pa.C.S. § 3106 was a correct statement of the law. [**Russell**, 2023 WL 315610,] *2.

Similarly, in the present case, the prosecution made a correct statement of the law. The statute in question specifically and explicitly states that it applies to offenses "**under this chapter**." 18 Pa.C.S. § 3106 (emphasis added). The offenses in Title 18, Chapter 31 are only sex offenses. Further, as in **Russell**, the trial court advised the jury that the statements and arguments of the attorneys are not evidence. N.T.[ Jury Trial, 7/17/19,] at 15. Attorney [Abigail] Leeds[, Beatty's trial counsel,] testified that she did not object to the prosecutor's statements because they were an accurate statement of the law. Attorney Leeds did not have a reasonable basis to object to the prosecutor's statements.

Even if this [c]ourt were to credit [Beatty's] interpretation of the prosecution's argument, his claim is still without arguable merit. As in **Russell**, the trial court instructed the jury that the statements and arguments of the attorneys are not evidence. N.T.[ Jury Trial, 7/17/19,] at 15 ("You should consider the statements and arguments of counsel carefully even though they are not binding upon you and are not evidence. So[,] what the lawyers say is not evidence."). As in **Russell**, the trial court here instructed the jury that the statements and arguments of the attorneys are not the law. N.T.[ Jury Trial, 7/18/19,] at 15 ("Neither the opening statements nor the closing arguments of counsel constitute the law you will apply in this case, nor are they part of the evidence and should not be considered as such."). **See also Commonwealth v. Philistin**, 53 A.3d 1, 18 (Pa. 2012) (finding trial counsel was not ineffective for not further objecting

to the closing argument because the law presumes the jury will follow the instructions of the court[]).

PCRA Court Opinion, 8/23/24, at 5-6.

Given that, under our jurisprudence, other criminal acts may be proven through the testimony of a single, uncorroborated complainant, the prosecutor's statement highlighting that the single-complainant law only applies to sex-related crimes is, taken in isolation, somewhat confusing, if not circular. Nevertheless, Section 3106, the single-complainant law at issue, applies exclusively to Title 18, Chapter 31 of Pennsylvania's Consolidated Statutes, which is titled "Sexual Offenses." Having been written by the Pennsylvania Legislature specifically in regard to sexual offenses, that section clearly states, "[t]he testimony of a complainant need not be corroborated in prosecutions under this chapter." 18 Pa.C.S. § 3106.

Although the prosecutor's language was, at certain points, imprecise, we are unable to find any obvious or prejudicial misstatement of the law, either in the form of erroneous burden shifting or mischaracterization of evidentiary thresholds. Further, we do not see any improper emphasis from the prosecutor establishing that the Pennsylvania Legislature had a particularized interest in prosecuting Beatty. Finally, the court's disclaimer of the prosecutor's opening and closing statements, wherein it indicated that his words were not evidence, provides further repudiation of both any substantive merit to the claim that counsel was ineffective for having not objected during the prosecution's opening and closing statements and, too, that Beatty

suffered any resulting prejudice. *See Commonwealth v. Stokes*, 839 A.2d 226, 230 (Pa. 2003) ("A jury is presumed to follow the court's instructions."). As such, we conclude counsel was not ineffective on this basis.

In his third ineffectiveness claim, Beatty contends that his trial counsel failed to request an inconsistent statement jury instruction pursuant to standard instruction 4.08A. That instruction reads:

1. You have heard evidence that a witness, [name of witness], made a statement on an earlier occasion that was inconsistent with [his] [her] present testimony.

2. You may consider this evidence for one purpose only, to help you judge the credibility and weight of the testimony given by the witness at this trial. You may not regard evidence of an earlier inconsistent statement as proof of the truth of anything said in that statement.[6]

[3. When you judge the credibility and weight of testimony, you are deciding whether you believe the testimony and how important you think it is.]

Pa. SSJI (Crim) § 4.08A (some brackets in original).

When reviewing a trial court's jury instructions, the following principles apply:

[O]ur scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an

_____

[6] There are alternative instructions at this enumeration, but we utilize the one contained in Beatty's brief. *See* Appellant's Brief, at 40.

omission which is tantamount to fundamental error.

***Commonwealth v. Barker***, 963 A.2d 495, 507 (Pa. Super. 2008) (citation omitted).

In addition,

we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

***Id.*** (citation omitted).

Beatty claims that, because "the entire defense was centered on pointing out that the complainant's statements and testimony were inconsistent," Appellant's Brief, at 42, his trial counsel had no reasonable basis for the failure to request standard instruction 4.08A. To prove his point, Beatty suggests that trial counsel "argued that nothing corroborated the [complainant's] testimony – there were no other witnesses, there was no DNA or other forensic evidence, there was no electronic evidence, and the complainant's behavior had not changed at school." ***Id.*** In addition, counsel "argued that the complainant could not keep her story straight both in terms of the details of the alleged assaults, whether penetration had actually occurred, and whether there were two incidents or three." ***Id.*** Beatty asserts that, predicated on his counsel's arguments at trial, an inconsistent statement instruction could have "assisted the jury in evaluating the weight and credibility of testimony." ***Id.*** at 42-43.

At the close of trial, the court did not give an instruction regarding prior inconsistent statements, nor did Beatty request one. Instead, during the relevant part of the jury instructions, the court explained the jury's function in evaluating credibility as follows:

A duty which accompanies that of judging the facts is the duty of appraising and evaluating credibility; that is, the believability of witnesses whom you have heard testify from the witness stand during the course of this trial. You cannot find facts based largely upon oral testimony without determining whom you will believe and whom you will not believe. You have the sole responsibility of deciding whether the testimony of any witness in this case is truthful and accurate and is to be believed or disbelieved in whole or in part. In doing so, you should use your understanding of human nature and your common sense.

All of us understand and appreciate the frailty of humankind precludes absolute accuracy in the recitation of past events. The human mind does not always perfectly record things seen or words spoken. It may be that the witness did not have an adequate opportunity to observe or sufficient motivation or capacity to recall those things about which he or she has testified. On the other hand, a witness's recollection of those things that have transpired in the past may be out of harmony with the truth by reason of a bias or prejudice.

You will take this into account in determining whether the testimony of any witness who appeared before you is truthful and accurate and is to be believed or disbelieved in whole or in part.

You will likewise consider the interests that the witness has in the outcome of the case, if any, and whether or not that tended, either consciously or unconsciously, to color the testimony of the witness.

You also will consider the demeanor of the witness on the stand and how that witness comported himself or herself before you. In that regard, you will take into account the small, indefinable nuance that all of us consider daily in determining the honesty, candor, truthfulness, and reliability of those persons we encounter during the course of our lifetime, like the spontaneous gesture of

the lifting of an eyebrow, intonation of the voice, flash of the eye, or a facial expression.

Members of the jury, there is barely a day that passes in your life that you do not apply these measures against others in making an assessment of the honesty, candor, and reliability. You will do precisely the same in the jury room when you come to analyze the credibility of any witness who has testified in this matter.

You should consider whether the witness's testimony was affected by any physical or mental condition.

You should consider the witness's intelligence and ability to observe and be informed about the matters to which he or she testified.

You should consider the ability of the witness to remember the events about which he or she testified.

You should consider whether the witness was positive and certain or hesitant and doubtful in his or her testimony.

You should consider whether the witness testified frankly and fairly or whether he or she showed favoritism or bias in one way or in any way.

And you should consider whether and to what extent the witness's testimony is supported by or contradicted by evidence in the case which you do believe.

These are mere suggestions of things to consider. Obviously[,] there are other considerations you can use in evaluating the credibility of a witness, and these are for you to determine. You must judge the truthfulness and accuracy of all of the witnesses.

N.T. Jury Trial, 7/18/19, at 259-62.

In the subsequent PCRA hearing, trial counsel indicated that she was aware of jury instruction 4.08A. *See* N.T. PCRA Hearing, 5/21/24, at 37. Trial counsel provided reasons as to why she did not request this instruction. First, she testified that "sometimes you tend to lose the attention of a jury when

you request every single possible applicable instruction." *Id.* at 38. Second, counsel requested a credibility instruction, which was given and "goes in-depth into evaluating the credibility of witnesses[.]" *Id.* at 38-39. Third, and most importantly, counsel stated that there was a reason "very specific to this case" as to why she did not request the instruction. *Id.* at 39. In particular:

> The major prior inconsistent statement – which I did argue – I argued extensively in my closing argument – was with regard to penetration.
>
> I have been an attorney at this point for almost 20 years. I've had many jury trials. I was watching the jury very closely when the victim was explaining why she changed her answer on penetration with regard to, you know, initially believing it had to be more of a full-on penetration as opposed to penetration of the labia by fingertip. I did not want to add in another jury instruction that would have another 10 to 15 minutes where specifically, my concern was, the jury would be sitting there picturing penetration, digital penetration, of a 13-year-old. That was a very significant concern for me.
>
> They were clearly uncomfortable with that conversation. They were uncomfortable with the thought of the penetration. And because the – that was my opinion. And because the credibility instruction covered everything with regards to credibility extensively, I didn't want to add another 10 to 15 minutes that I thought would focus them specifically on that image. That was a real concern for me.

*Id.* at 39-40. As discussed by trial counsel, S.F. had originally said that "penetration did not occur," but "[a]fter being explained what the legal definition of penetration was . . . she did change her answer to say there was penetration." *Id.* at 40-41. Trial counsel emphasized this inconsistency "pretty significantly[.]" *Id.* at 41. Nevertheless, while the credibility instruction contained nothing regarding inconsistent statements, in counsel's mind,

- 16 -

credibility, and an instruction thereon, was *the* important instruction to have read to the jury. *See id.* at 43.

In determining that trial counsel was not ineffective for failing to request an inconsistent jury instruction, the PCRA court found that "the jury instructions were clear, adequate, and accurate, [requiring] no further charge . . . for the jury to ascertain the credibility of the witnesses." PCRA Court Opinion, 8/23/24, at 8.

Although, given the facts of this case, there is some merit to the contention that an inconsistent statement instruction should have been requested, we find that, in light of counsel's explanation as to why she did not request that instruction, Beatty has failed to prove that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009); *see also Brown*, 196 A.3d at 150–51. In counsel's own words, it was a double-edged sword bringing up, again, the concept of penetration, which would have lasted several minutes, when she had observed the jury display discomfort at the first mention of this topic. While the jury, having not received an inconsistent statement instruction, found Beatty guilty of the charges against him, it is not evident that the instruction's inclusion would have offered "substantially greater" success. *See id.* As such, counsel had a reasonable basis for not seeking this instruction and was, therefore, not ineffective. *See Commonwealth v. Lawrence*, 165 A.3d 34, 44 (Pa. Super. 2017) ("whether

to request additional points for charge is one of the tactical decisions 'within the exclusive province of counsel' … [and w]e should not invade that province and declare counsel ineffective if any reasonable basis for counsel's decision existed at the time of trial") (citations omitted).

In his fourth ineffectiveness claim, Beatty argues that trial counsel failed to object to improper expert testimony. Beatty contends that although the witness "claimed not to have seen the file" in this case, she ultimately testified that everything mentioned by the complainant "was indicative of an actual sexual assault happening." Appellant's Brief, at 44. "Thus, for each key point that the [expert] made, the complainant testified to exactly the same thing." *Id.* at 45. In effect, such testimony "amounted to the improper bolstering of the complainant's credibility[.]" *Id.* at 45-46. In summary, Beatty argues that the testimony was: (1) irrelevant; (2) not "*really*" expert testimony;[7] and (3) an improper bolster of the complainant's credibility.[8] *See id.* at 46.

"It is well-settled that expert testimony on the issue of a witness's credibility is impermissible, as it encroaches on the province of the jury to make such determinations." *Commonwealth v. Jones*, 240 A.3d 881, 896

---

[7] Beatty states that the expert "worked hand in hand with the prosecution given that the majority of her experience came from working for Mission Kids, which was the agency in question in this case[.]" Appellant's Brief, at 52.

[8] Beatty concedes, however, that the expert "did not specifically say that the complainant was credible[.]" Appellant's Brief, at 52.

(Pa. 2020). Nevertheless, "[w]hile some [expert] testimony [concerning victim responses and behaviors to sexual assaults] may be prohibited for impermissibly invading the jury's province of determining credibility, [not] all testimony will. Whether or not this prohibition has been violated must instead be assessed on a case[-]by[-]case basis." *Id.* at 896-97. Moreover, "a properly qualified expert may testify to facts and opinions regarding specific types of victim responses and behaviors in certain criminal proceedings involving sexual assaults, provided experts do not offer opinions regarding the credibility of any witness, including the victim." *Id.* (discussing 42 Pa.C.S. § 5920, which implicates use of expert testimony in criminal proceedings involving sexual offenses).

The now complained-of expert in this matter, Dr. Johanna Crocetto, testified as to the varied responses of child sexual assault victims, as follows:

Q: That brings me to my next question here: How common is it for a child to immediately disclose they have been sexually assaulted?

A: The process of disclosure for a child is really complicated and so different for every child. Some children do tell right away. Some children wait. And when they wait, they often have really good reasons to wait.

What we know is that often with sexual assaults, a perpetrator will threaten the child in some way, either a threat of violence or will actually commit violence and threaten continued violence, or a threat of all those consequences I talked about before: No one will believe you, where are you going to live, your family is going to be homeless, things like that.

And so[,] since the child is younger and really understanding these things, is more compromised, they really do believe – they're

more likely to believe those threats.

In addition, because they have often a relationship with the perpetrator or a loved one has a relationship with a perpetrator, they're hesitant to tell because they're worried about the impact or being believed.

It is often delayed and a little compromised, that correct process of disclosure.

Q: So[,] what if the child is exposed to the person on a regular basis; for example, if the child is sexually assaulted by the offender, and then they have to see them repeatedly afterwards but not on an assaultive basis but more on a normal basis? What impact does that have on a child?

A: Oh, it can be confusing for a child because although the sexual assault occurs, which is associated with fear and often shame and so many other ones of those complicated emotions, at the same time they might also develop a kind and loving relationship with the perpetrator as well.

And if they're spending a lot of time with the child, that pretty much means often that the perpetrator is often spending time with the family. So[,] the child is watching their caregivers or their siblings or their family members and loved ones become close and form a relationship with that child as well.

When a sexual assault occurs, it is an enormous betrayal which can really impact the child's ability to cope. But then the child also understands that telling what happened is going to be – may be experienced by the family as a betrayal as well, so it can really delay and, again, complicate the decision to disclose.

Q: What if the offender is somebody that's in a close relationship with the child's family? More specifically, what if the offender is somebody in a relationship with the child's mother or somebody close to her in that sense? Would that impact the situation?

A: I would say so. What I have heard from the children I have worked with and the caregivers that I've worked with is that children may fear that they're not going to be believed because everyone else is experiencing the perpetrator as a very kind and loving person.

In addition, they may worry about their caregiver who loves and care for this person that has committed this sexual assault. They worry if I tell – if it is my mom, I am worried that my mom is going to emotionally really struggle, and the child takes on the responsibility of what that would be like.

And, again, if the family and the child are emotionally, financially, physically, in any way reliant on that person, they're going to be more hesitant to tell.

N.T. Jury Trial, 7/17/19, at 46-49. Trial counsel did not have any concerns about Dr. Crocetto's testimony. *See* N.T., PCRA Hearing, 5/21/24, at 43.

As alluded to above, expert testimony for sexual offenses is governed by 42 Pa.C.S. § 5920(b), which provides as follows:

(1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence or domestic violence, that will assist the trier of fact in understanding the dynamics of sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual violence or domestic violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

(4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S. § 5920(b).

The PCRA court found that Dr. Crocetto's testimony did not violate any

of the precepts set forth in subsection 5920(b):

> [Doctor] Crocetto testified that she did not know any of the facts of the case or any of the alleged conduct. She only knew the general idea that the case involved a sexual assault of a child. [Doctor] Crocetto never met with the victim or any members of her family. She also testified that she has no opinion with regards to this specific case, whether the victim is being truthful or not, or whether the disclosure patterns that she discussed were applicable to the victim. [Doctor] Crocetto never offered an opinion regarding the victim's credibility. [Beatty's] claim of ineffective assistance of counsel for failure to object to the admission of expert witness [Dr.] Crocetto's testimony lacks merit.

PCRA Court Opinion, 8/23/24, at 12-13 (record citations omitted).

After our thorough review of the trial testimony, we agree that nothing that Dr. Crocetto testified to ran afoul of Subsection 5920(b). Doctor Crocetto spoke in general terms,[9] providing background information to the jury about the behavior of children who have experienced sexual assault, and did not opine on S.F.'s credibility. Other than what can only be described as innuendo from Beatty suggesting, *inter alia*, that Dr. Crocetto was not qualified to be

---

[9] Beatty argues, somewhat contradictorily, that when Dr. Crocetto would opine, generally, about the behavior of children, "it was not helpful to the jury." Appellant's Brief, at 46. In Beatty's words, Dr. Crocetto's testimony "provided the jury with conclusory statements on subjects which the jurors would be well equipped to consider on their own. For example, it likely does not come as a surprise to anyone that children are dependent on and possibly afraid of adults, or that children do not always resist abuse." ***Id.*** At a minimum, Beatty reads these highlighted pieces of Dr. Crocetto's testimony in isolation and further provides no authority to demonstrate, as a matter of law, that these concepts are wholly within the realm of a layperson's understanding.

deemed an expert given her bias as a result of her previous employment at Mission Kids, *see* Appellant's Brief, at 43, Beatty has failed to provide a cogent argument that her testimony impermissibly invaded the province of the jury as the arbiter of credibility determinations. As such, trial counsel was not ineffective for failing to object to this expert's qualification as such and her testimony, and Beatty is due no relief.

Having determined that Beatty's trial counsel was not ineffective, we affirm the PCRA court's order dismissing his PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/5/2025